Exhibit C
Junior DIP Note

**THIS SECOND LIEN PROMISSORY NOTE IS SUBJECT TO THE TERMS OF THE DIP ORDER (AS DEFINED IN ANNEX 1 HERETO)**

**SECURED PROMISSORY NOTE**

US$[            ]                                                                                     October __, 2014

        FOR VALUE RECEIVED, the undersigned, Reichhold, Inc., a Delaware corporation (the "Maker"), hereby promises to pay to the order of Reichhold Holdings International B.V., a private company with limited liability, incorporated and organized under Dutch law (the "Lender," which term shall also include any subsequent successors or permitted assigns and holders of this Note), at its offices located at [            ], Attention: [            ], or at such other place as Lender shall specify in writing, on the Maturity Date (as defined below), the lesser of (x) the principal amount of [            US Dollars] (US$[            ]) and (y) the unpaid principal amount of all advances made by Lender to Maker pursuant to Section 1 below, in each case, in the lawful currency of the United States of America, together with interest on the unpaid principal amount from time to time outstanding hereunder from and including the date hereof until such principal is paid in full. The principal of and interest on this Note shall be due and payable at such time and in such amounts as set forth herein.

        Capitalized terms used herein and not otherwise defined shall have the meanings assigned to such terms in Annex 1 hereto. The Maker's obligations hereunder are guaranteed by the Guarantors and secured by the Collateral under and as defined in the Security Agreement, subject in all respects to the DIP Order. All references to this Note shall include the Annexes hereto.

    1.    **Advances; Principal**.

        (a)    Subject to the satisfaction of the conditions precedent specified in Section 6(a), on the date hereof, Lender agrees to advance to Maker a loan (the "Initial Loan") in the lawful currency of the United States of America in a principal amount (such amount, the "Initial Loan Amount") equal to the lesser of (x) [            US Dollars] (US$[            ]) (the "Maximum Principal Amount") and (y) such amount as the Bankruptcy Court shall approve in connection with the Interim DIP Order.

        (b)    During the Commitment Period, on such date as the Maker satisfies the conditions precedent specified in Section 6(b), Lender agrees to advance to Maker a loan (such loan, the "Additional Loan") in a principal amount equal to the lesser of (x) the sum of the Maximum Principal Amount minus the Initial Loan Amount and (y) such amount as the Bankruptcy Court shall approve in connection with the Final DIP Order

        (c)    Lender will make no more than one Initial Loan and one Additional Loan hereunder.

(d) All loans advanced hereunder shall rank *pari passu* with each other.

(e) Subject to Section 3 hereof, the aggregate principal amount of all loans advanced under this Note pursuant to the foregoing clauses (a) and (b) (as such principal amount is increased in accordance with Section 2 below), together with all accrued and unpaid interest thereon, shall be due and payable upon the earlier of (i) the date this Note is accelerated pursuant to Section 7(b) hereof and (ii) February 27, 2015 (which date, or such earlier date to which the maturity of this Note is accelerated, shall be referred to as the "Maturity Date").

2. **Interest.**

(a) Interest Rate. Subject to Section 2(c), all loans advanced under this Note shall bear interest on the unpaid principal amount thereof from and including the date such loans are advanced hereunder through but excluding the date this Note is paid in full (whether upon final maturity, by prepayment, acceleration or otherwise) at the rate of 12.00% per annum; *provided*, that the Maker may elect (by giving the Lender written notice of such election at least five Business Days prior to such Interest Payment Date) on any Interest Payment Date to pay all or a portion of such accrued interest by adding (on such Interest Payment Date) such accrued interest (but at a rate equal to 14.00% per annum) to the outstanding principal amount of all loans advanced under this Note ("PIK Interest"). Interest on all loans advanced under this Note shall be computed on the basis of a 360-day year and twelve 30-day months.

(b) Interest Payment Date. Interest on all loans advanced under this Note shall be payable (a) quarterly in arrears on the last Business Day of March, June, September and December of each year (each such date an "Interest Payment Date"), commencing on the first such date occurring after the date hereof, (b) upon any prepayment with respect to this Note (to the extent accrued on the amount being prepaid) and (c) on the Maturity Date (or such other time as this Note becomes due and payable, whether by acceleration or otherwise).

(c) Default Rate. After the occurrence and during the continuance of an Event of Default, the entire unpaid principal amount of all loans advanced under this Note (and interest on all overdue payments of principal of, and, to the fullest extent permitted by applicable law, interest on, all loans advanced under this Note) and all other Obligations then outstanding or payable shall bear interest at a rate per annum equal to 2.00% per annum above the rate otherwise payable under Section 2(a) (the "Default Rate"), and shall be payable upon demand.

(d) Cash Payment at Maturity. Notwithstanding anything herein or in any other Transaction Document to the contrary, any payment of accrued but unpaid interest at the maturity of this Note (or at such other time as payment of the

2

principal amount of this Note or any portion thereof is due (as a result of prepayment, acceleration or otherwise)) shall be made entirely and exclusively in cash.

3. **Payments and Prepayment.**

(a)     All payments and prepayments of principal of and interest on this Note shall be made in lawful money of the United States of America. If any payment hereunder falls due on a day that is not a Business Day, such payment shall be payable on the next succeeding Business Day (with interest for such additional day). All payments on this Note shall be applied first to accrued interest, if any, and thereafter to the outstanding principal balance hereof.

(b)     Subject to the DIP Order and to obtaining the prior written consent of the Senior Non-DIP Agent (acting upon the instructions of the Senior Non-DIP Required Holders), the Maker may at any time and from time to time prepay the principal balance of this Note, in whole or in part, upon at least two Business Days' prior notice, together with all accrued but unpaid interest to the date of prepayment.

4. **Covenants.**

(a)     The covenants applicable to the Transaction Parties in (i) Paragraphs 5 and 6 of the Senior Note Purchase Agreement, as amended, modified, waived and/or restated from time to time with the consent of the Required Holders or (ii) solely to the extent consented to in writing by the Senior Non-DIP Agent (acting upon the instructions of the Senior Non-DIP Required Holders), any analogous provisions contained in any note purchase agreement or credit facility (such agreement or facility, an "Alternative DIP Facility") replacing or otherwise refinancing such Senior Note Purchase Agreement in effect from time to time, are hereby incorporated herein, *mutatis mutandis*, by reference as if fully set forth herein, including any necessary definitions contained therein from time to time; and Lender shall have the right to enforce such covenants as independent covenants under this Note; provided that, nothing herein shall be deemed to prohibit the Maker or the Holders under the Senior Note Purchase Agreement from amending, modifying, waiving, restating or replacing said covenants or related definitions therein, and upon the effectiveness thereof, any such amendments, modifications, waivers or replacements shall automatically be incorporated herein by reference. Maker shall provide Lender and Senior Non-DIP Agent with a true and correct copy of each such amendment, waiver, modification or replacement no later than five (5) Business Days following execution thereof.

(b)     None of Maker and Lender shall enter into any Alternative DIP Facility, unless concurrently therewith (in addition to any other obligations set forth herein), Maker and Lender amend this Note to include herein covenants (whether affirmative, negative or otherwise) substantially similar to such covenants as are applicable to the Transaction Parties hereunder (whether expressly specified herein or

3

incorporated herein by reference) immediately prior to such Alternative DIP Facility becoming effective.

5. **Representations and Warranties.**

(a) Maker and each other Transaction Party hereby represents and warrants to the Lender that as of the date hereof:

(i) Maker and such other Transaction Party is a corporation duly organized, validly existing and in good standing under the laws of [Delaware] [its jurisdiction of incorporation] and has all requisite power and authority to carry on its business as now conducted.

(ii) The execution, delivery and performance by Maker and other Transaction Party of this Note and the other Transaction Documents to which it is a party are within Maker's and such Transaction Party's power and authority and have been duly authorized by all necessary or proper action of the Maker and such Transaction Party.

(iii) This Note and the other Transaction Documents constitute the valid and legally binding obligations of Maker and the applicable Transaction Parties, enforceable against Maker and such Transaction Parties in accordance with their respective terms.

(b) Without limiting the foregoing, the representations and warranties applicable to the Transaction Parties in (i) Paragraph 9 of the Senior Note Purchase Agreement, as amended, modified, waived and/or restated from time to time with the consent of the Required Holders or (ii) solely to the extent consented to in writing by the Senior Non-DIP Agent (acting upon the instructions of the Senior Non-DIP Required Holders) in writing, any analogous provisions contained in any Alternative DIP Facility in effect from time to time, are hereby incorporated herein, *mutatis mutandis*, by reference as if fully set forth herein, including any necessary definitions contained therein from time to time; provided that, nothing herein shall be deemed to prohibit the Maker or the Holders under the Senior Note Purchase Agreement from amending, modifying, waiving, restating or replacing said representations and warranties or related definitions, and upon the effectiveness thereof, any such amendments, modifications, waivers or replacements shall automatically be incorporated herein by reference. Maker shall provide Lender and Senior Non-DIP Agent with a true and correct copy of each such amendment, waiver, modification or replacement no later than five (5) Business Days following execution thereof.

(c) None of Maker and Lender shall enter into any Alternative DIP Facility, unless concurrently therewith (in addition to any other obligations set forth herein), Maker and Lender amend this Note to include herein representations and warranties substantially similar to such representations and warranties as are applicable to

4

the Transaction Parties hereunder (whether expressly specified herein or incorporated herein by reference) immediately prior to such Alternative DIP Facility becoming effective.

### 6. Conditions Precedent.

(a) <u>Initial Loan Conditions Precedent</u>. On or before the date hereof, the Lender and the Collateral Agent shall have received the following:

(i) an original counterpart of this Note, executed and delivered by a duly authorized representative of each Transaction Party;

(ii) the Security Agreement, duly executed and delivered by each Transaction Party;

(iii) copies of the Interim DIP Order;

(iv) from Cole, Schotz, Meisel, Forman & Leonard P.A., as US counsel for Maker and the other Transaction Parties, an opinion letter dated the date hereof, in form and substance reasonably satisfactory to the Collateral Agent;

(v) Lender shall have received true and correct copies of the Senior Note Purchase Agreement and all agreements and instruments entered into in connection therewith, certified as true and correct copies thereof by a duly authorized officer of Maker and in form and substance reasonably satisfactory to Lender, and all of the conditions precedent in Paragraph 3A of the Senior Note Purchase Agreement shall have been satisfied in all material respects or waived; and

(vi) The purchase price of this Note includes a closing fee equal to 6.00% of the aggregate principal amount of this Note in the form of original issue discount. Such fee shall be payable to Lender out of the proceeds of such Lender's loan hereunder as and when funded on the date hereof and shall be treated (and reported) by Maker and Lender as a reduction in issue price of such loan for U.S. federal, state and local income tax purposes. Such closing fee will be in all respects fully earned, due and payable on the date hereof and non-refundable and non-creditable thereafter.

The consummation of the sale and purchase of Initial Notes on the Initial Closing Date (as each such term is defined in the Dutch Note Purchase Agreement) pursuant to the terms of the Dutch Note Purchase Agreement shall be deemed to constitute evidence of the satisfaction of the conditions precedent set forth in this Section 6(a), unless the Lender is notified otherwise by the Senior Non-DIP Agent.

(b) <u>Additional Loan Conditions Precedent</u>. Lender's obligation to extend the Additional Loan hereunder will be subject to the satisfaction (or waiver by the Senior Non-DIP Agent) of the following conditions:

5

(i) Lender and Collateral Agent shall have received Maker's written request for such Additional Loan, which request will (x) specify the proposed date on which such Additional Loan is requested to be made (such date, the "Additional Loan Extension Date"), and be delivered to the Lender and Collateral Agent at least [5 Business Days] prior to such proposed Additional Loan Extension Date (which shall be a Business Day during the Commitment Period) and (y) specify the aggregate principal amount of such Additional Loan;

(ii) The representations and warranties contained in this Note (including such representations and warranties incorporated herein by reference to the Senior Note Purchase Agreement or Alternative DIP Facility) and in each other Transaction Document are true and correct in all material respects (without duplication of any materiality qualifier contained therein) on and as of the Additional Loan Extension Date;

(iii) As of the Additional Loan Extension Date, no event has occurred and is continuing, or would result from the extension of the Additional Loan or other transactions contemplated hereby, which would constitute a Default or an Event of Default; and

(iv) The Final DIP Order shall have been entered by the Bankruptcy Court.

The consummation of the sale and purchase of Additional Notes on the Subsequent Closing Date (as each such term is defined in the Dutch Note Purchase Agreement) pursuant to the terms of the Dutch Note Purchase Agreement shall be deemed to constitute evidence of the satisfaction of the conditions precedent set forth in this Section 6(b), unless the Lender is notified otherwise by the Senior Non-DIP Agent.

7. **Defaults and Remedies**.

(a) An "Event of Default" shall occur if:

(i) the Maker shall default in the payment of principal or interest when due on any of the loans advanced under this Note;

(ii) any Transaction Party shall breach in any material respect any representation or warranty made by it herein (including, without limitation, any representation or warranty incorporated herein by reference to the Senior Note Purchase Agreement or Alternative DIP Facility, as applicable) or in any other Transaction Document;

(iii) any Transaction Party shall breach any covenant in this Note (including, without limitation, any covenant incorporated herein by reference to the Senior Note Purchase Agreement or Alternative DIP Facility, as applicable) or in any other Transaction Document and not otherwise covered by this Section 7, and the same

6

shall remain unremedied for a continuous period of 10 days (or, with respect to any breach of a covenant incorporated herein by reference to the Senior Note Purchase Agreement or Alternative DIP Facility, as applicable, such applicable longer grace period, to the extent the grace period therefor provided under the Senior Note Purchase Agreement or Alternative DIP Facility is longer than 10 days);

(iv) any Event of Default (as defined in the Senior Note Purchase Agreement) has occurred and is continuing;

(v) any Event of Default (as defined in the Alternative DIP Facility) has occurred and is continuing; or

(vi) any material provision of this Note or any Transaction Document shall for any reason (other than a termination thereof in accordance with the terms hereof or thereof or breach by any party thereto that is not Maker or any other Transaction Party) cease to be valid and binding on or enforceable against Maker or any other Transaction Party or any Subsidiary of any Transaction Party party thereto, or Maker, any Transaction Party or any Subsidiary of any Transaction Party shall so state in writing or bring an action to limit its obligations or liabilities hereunder or thereunder; or the performance by Maker or any Transaction Party of its obligations under any material provision of any Transaction Document shall become unlawful (other than as already expressly contemplated therein).

(b) If an Event of Default occurs under clause (a) of this Section 7, then the outstanding principal of and all accrued interest on all loans advanced under this Note, may be declared (by the Lender or the Collateral Agent) immediately due and payable (and, upon the occurrence of any events described in Paragraphs 8A(7) or 8A(8) of the Senior Note Purchase Agreement or such analogous provisions under any Alternative DIP Facility, such principal and interest shall automatically and immediately become due and payable), without notice or demand of any kind, and the Commitment Period may be declared (by the Lender or the Collateral Agent) immediately terminated (and, upon the occurrence of any events described in Paragraphs 8A(7) or 8A(8) of the Senior Note Purchase Agreement or such analogous provisions under any Alternative DIP Facility, such Commitment Period shall automatically and immediately terminate). Upon such declaration (or automatic acceleration), but subject to the terms and provisions of the DIP Order, such principal and interest shall become immediately due and payable without presentment, demand, protest or other notice of any kind, all of which the Maker and each other Transaction Party expressly waives hereby, and the Commitment Period shall immediately terminate. The Transaction Parties acknowledge, and the parties hereto agree, that Lender has the right to maintain its investment in this Note free from repayment by Maker (except as specifically provided in Section 3 hereof) and without the occurrence of an Event of Default.

(c) Upon the occurrence of any one or more Events of Default, but subject to the terms and provisions of the DIP Order, Lender and/or Collateral Agent

7

may proceed to protect and enforce their rights hereunder or under any other Transaction Document in equity, at law or by other appropriate proceeding, and Maker will reimburse Lender and Collateral Agent for any reasonable costs and expenses incurred by them in connection therewith.

(d) No remedy herein or in any other Transaction Document conferred upon Lender and Collateral Agent is intended to be exclusive of any other remedy hereunder and each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute or otherwise.

(e) No course of dealing between the Maker and Lender and/or Collateral Agent or any delay on the part of Lender and/or Collateral Agent in exercising any rights hereunder shall operate as a waiver of any right. No single or partial exercise of any right or remedy shall preclude any other or further exercise thereof or the exercise of any other right or remedy.

(f) None of Maker and Lender shall enter into any Alternative DIP Facility, unless concurrently therewith (in addition to any other obligations set forth herein), Maker and Lender amend this Note to include herein events of default substantially similar to such events of default as are applicable to the Transaction Parties hereunder (whether expressly specified herein or incorporated herein by reference) immediately prior to such Alternative DIP Facility becoming effective.

8. **Notices.** Notices and other communications provided for herein shall be in writing and shall be delivered by hand or overnight courier service, mailed by certified or registered mail or sent by telecopy, as follows:

(a) if to the Maker, Reichhold, Inc., _____, Attention of _____ (Telecopy No. _____); with a copy to _____, Attn: _____ (Telecopy No. _____);

(b) if to Lender, to Reichhold Holdings International, B.V.,, _____, Attention of _____ (Telecopy No._____), with a copy to _____, Attention of _____ (Telecopy No._____);

(c) if to Collateral Agent, to Cantor Fitzgerald Securities, _____, Attention of _____ (Telecopy No._____), with a copy to:

Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801

8

        Attn: Pauline K. Morgan
        Telecopy: •

And

        Paul, Weiss, Rifkind, Wharton & Garrison LLP
        1285 Avenue of the Americas
        New York, NY 10019
        Attn: Andrew N. Rosenberg
        Telecopy: •

        All notices and other communications delivered, sent or mailed (properly addressed) to any party hereto in accordance with the provisions of this Note (or in accordance with the latest unrevoked direction from such party given in accordance with this Section 8) shall be deemed to have been given on (i) the date of receipt if delivered by hand or overnight courier service (ii) the date of transmission if sent by telecopy or (ii) on the date four (4) Business Days after dispatch by certified or registered mail if mailed.

        **9.**    **Assignment.**

        (a)    Neither this Note nor the rights, duties and obligations of the Maker hereto may be assigned by the Maker at any time, by operation of law or otherwise without Senior Non-DIP Agent's prior written consent. Lender may sell, assign or transfer all or any part of this Note without consent of the Maker.

        (b)    Without limiting or being limited by the foregoing, Maker and each Transaction Party acknowledge that Lender is a party to the Dutch Note Purchase Agreement and hereby agree and consent to Lender's assignment and pledge of all of its right, title and interest in and to this Note for the benefit of any or all of the Senior Non-DIP Agent, the Senior Non-DIP Holders and the Senior Non-DIP Purchasers to secure the prompt performance of its obligations under the Senior Non-DIP Transaction Documents (whether pursuant to the terms of the Intercompany Note Pledge Agreement or other security agreement). Maker and each Transaction Party further acknowledge and agree that pursuant to (and subject to the terms of) such assignment and pledge (i) Lender shall not exercise any rights or remedies hereunder or any other Transaction Document without the consent of the Senior Non-DIP Agent and Senior Non-DIP Holders and (ii) such Senior Non-DIP Agent and Senior Non-DIP Holders shall by notice to Lender and Maker have the right to exercise all rights and remedies of Lender hereunder, including, without limitation, any right to credit bid all or part of the Note in the Chapter 11 Cases.

        **10.**    **Binding Effect.** This Note and the terms and conditions set forth herein shall be binding upon and shall inure to the benefit of the parties hereto and, subject to Section 9, their successors and permitted assigns. For the avoidance of doubt, the Senior Non-DIP Agent is a direct and intended third party beneficiary of (with the

9

right to enforce directly) all rights accorded to the Lender and Senior Non-DIP Agent hereunder.

11. **Amendments.** This Note may not be modified or discharged orally, but only in writing duly executed by Lender and the Maker, and consented to by the Senior Non-DIP Agent.

12. **GOVERNING LAW.** THIS NOTE SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, AND THE RIGHTS OF THE PARTIES SHALL BE GOVERNED BY, THE LAW OF THE STATE OF NEW YORK (EXCLUDING ANY CONFLICTS OF LAW RULES WHICH WOULD OTHERWISE CAUSE THIS NOTE TO BE CONSTRUED OR ENFORCED IN ACCORDANCE WITH, OR THE RIGHTS OF THE PARTIES TO BE GOVERNED BY, THE LAWS OF ANY OTHER JURISDICTION).

13. **SUBMISSION TO JURISDICTION.** ANY LEGAL ACTION OR PROCEEDING WITH RESPECT TO THIS NOTE OR ANY OTHER TRANSACTION DOCUMENT MAY BE BROUGHT IN THE COURTS OF THE STATE OF NEW YORK OR OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK, AND BY EXECUTION AND DELIVERY OF THIS NOTE, EACH TRANSACTION PARTY AND LENDER CONSENT, FOR THEMSELVES AND IN RESPECT OF THEIR PROPERTY, TO THE NON-EXCLUSIVE JURISDICTION OF THOSE COURTS. EACH TRANSACTION PARTY AND LENDER IRREVOCABLY WAIVE ANY OBJECTION, INCLUDING ANY OBJECTION TO THE LAYING OF VENUE OR BASED ON THE GROUNDS OF FORUM NON CONVENIENS, WHICH THEY MAY NOW OR HEREAFTER HAVE TO THE BRINGING OF ANY ACTION OR PROCEEDING IN SUCH JURISDICTION IN RESPECT OF THIS NOTE OR ANY DOCUMENT RELATED HERETO. NOTWITHSTANDING THE FOREGOING, EACH OF THE PARTIES HERETO ACKNOWLEDGES THAT ANY APPEALS FROM THE COURTS DESCRIBED IN THE IMMEDIATELY PRECEDING SENTENCE MAY HAVE TO BE HEARD BY A COURT LOCATED OUTSIDE THOSE JURISDICTIONS.

14. *WAIVER OF JURY TRIAL.* EACH TRANSACTION PARTY AND LENDER WAIVES ITS RIGHTS TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS AGREEMENT, THE OTHER TRANSACTION DOCUMENTS, OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, IN ANY ACTION, PROCEEDING OR OTHER LITIGATION OF ANY TYPE BROUGHT BY ANY OF THE PARTIES AGAINST ANY OTHER PARTY OR ANY TRANSFEREE OR ASSIGNEE, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE. EACH TRANSACTION PARTY AND LENDER AGREES THAT ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE TRIED BY A COURT TRIAL WITHOUT A JURY. WITHOUT LIMITING THE FOREGOING, THE PARTIES FURTHER AGREE THAT EACH OF THEIR

RESPECTIVE RIGHTS TO A TRIAL BY JURY IS WAIVED BY OPERATION OF THIS SECTION AS TO ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY OF THIS AGREEMENT OR THE OTHER TRANSACTION DOCUMENTS OR ANY PROVISION HEREOF OR THEREOF. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT AND THE OTHER TRANSACTION DOCUMENTS.

15. **Further Assurances.**

(a) Subject in all respects to the DIP Order, Maker agrees that it shall (and shall cause each other Transaction Party to) from time to time, at its own expense, promptly upon the reasonable request of the Lender, execute, acknowledge, deliver, record, re-record, file, re-file, register and re-register any financing statements and continuations thereof, notices of assignment, transfers, certificates, assurances and other instruments in order (i) to carry out more effectively the purposes of this Note and the transactions contemplated hereby, (ii) to subject to the liens and security interests created by the Security Agreement, any of the properties, rights or interests of the Grantor intended to be covered thereby and (iii) to perfect and maintain the validity, effectiveness and priority of the Security Agreement and the liens and security interests intended to be created thereby.

(b) If any amendment of the Senior Note Purchase Agreement or Dutch Note Purchase Agreement, or the entry into any Alternative DIP Facility, adversely affects (in the reasonable opinion of the Senior Non-DIP Agent) the meaning or intent of any of the provisions and definitions herein (including in Annex 1), Maker and Lender shall, upon the written request of Senior Non-DIP Agent, from time to time, execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, promptly following such request, such amendments or supplements hereto, and such further instruments, and take such further actions, as may be necessary in Senior Non-DIP Agent's reasonable judgment to effectuate and/or maintain the intention of such provisions or definitions.

16. **Headings.** The headings in this Note are inserted for convenience of reference only and shall not limit or otherwise affect the meaning hereof and do not constitute part of this Note.

17. **Indemnification.** Maker will indemnify Lender and Collateral Agent, and their respective directors, officers, employees and agents (each such Person being called an "Indemnitee") against, and to hold each Indemnitee harmless from, any and all losses, claims, damages, liabilities and related expenses, including reasonable counsel fees, charges and disbursements and costs of enforcing this indemnification, incurred by or asserted against any Indemnitee arising out of or in any way connected with, or as a result of any actual or alleged presence or release of contaminants on any

11

property owned or operated by any Transaction Party, or any environmental claim related in any way to any Transaction Party; *provided* that such indemnity shall not as to any Indemnitee, be available to the extent that such losses, claims, damages, liabilities or related expenses are determined by a court of competent jurisdiction by final and nonappealable judgment to have resulted from the gross negligence or willful misconduct of such Indemnitee. The provisions of this Section 17 shall remain operative and in full force and effect regardless of the expiration of the Transaction Documents, the consummation of the transactions contemplated hereby, the repayment of this Note, the invalidity or unenforceability of any term or provision of this Note or any other Transaction Document, or any investigation made by or on behalf of Lender. All amounts due under this Section 17 shall be payable in immediately available funds upon written demand therefor.

        **18.**    **Expenses**. Maker agrees to pay or reimburse the Collateral Agent for any and all reasonable fees and out-of-pocket costs and expenses (including legal and other professional fees) incurred by the Collateral Agent in connection with this Note and any other Transaction Document, any other documents prepared in connection herewith or therewith and the transactions contemplated hereby or thereby. The provisions of this Section 18 shall remain operative and in full force and effect regardless of the expiration of the Transaction Documents, the consummation of the transactions contemplated hereby, the repayment of this Note, the invalidity or unenforceability of any term or provision of this Note or any other Transaction Document, or any investigation made by or on behalf of Collateral Agent. All amounts due under this Section 18 shall be payable in immediately available funds upon written demand therefor.

        [Remainder of page intentionally left blank.]

REICHHOLD, INC.

By _____
    Name:
    Title:


[INSERT NAME OF GUARANTOR]

By _____
    Name:
    Title:


[INSERT NAME OF GUARANTOR]

By _____
    Name:
    Title:


ACKNOWLEDGED AND AGREED:

REICHHOLD HOLDINGS INTERNATIONAL, B.V.

By:_____
    Name:
    Title:


CANTOR FITZGERALD SECURITIES, as Collateral Agent

By:_____
Name:
Title:

**Annex 1**

## DEFINITIONS

In addition to the defined terms incorporated by reference to the Senior Note Purchase Agreement pursuant to Section 4(a) and 5(b), capitalized terms used in the Transaction Documents shall have (unless otherwise provided elsewhere in the Transaction Documents) the following respective meanings:

"Alternative DIP Facility" shall have the meaning assigned to such term in Section 4(a).

"Bankruptcy Court" shall mean the United States Bankruptcy Court presiding over the Chapter 11 Cases.

"Business Day" means any day that is not a Saturday, Sunday or a day on which banks are required or authorized to close in New York, New York.

"Chapter 11 Cases" shall mean the chapter 11 cases commenced on [insert] in the United States Bankruptcy Court with respect to Reichhold Holdings US, Inc., a [Delaware] corporation, and certain of its Subsidiaries.

"Closing Date" shall mean the date of this Note.

"Collateral" shall have the meaning assigned to such term in the Security Agreement.

"Collateral Agent" shall mean Cantor Fitzgerald Securities, as collateral agent under the Security Agreement, or any successor in such capacity.

"Commitment Period" shall mean the period beginning on the date hereof and ending on the earlier to occur of (a) the date that is 60 days from the date hereof and (b) the date of the termination of the Commitment Period pursuant to Section 7(b).

"Default" shall mean the occurrence of any event or condition which, with notice, lapse of time or both would constitute an Event of Default.

"Default Rate" shall have the meaning set forth in Section 2(c) of this Note.

"DIP Loan Documents" means the Senior Note Purchase Agreement and this Note, and all ancillary and security agreements executed and delivered in connection herewith and therewith.

"DIP Order" means the Interim DIP Order and/or the Final DIP Order, as applicable.

"Dutch Note Purchase Agreement" means that certain Note Purchase and Guaranty Agreement, dated as of the date hereof, among Reichhold Holdings International B.V., certain guarantors party thereto, certain purchasers party thereto and Cantor Fitzgerald Securities, as administrative and collateral agent (the "Senior Non-DIP Agent"), as the same shall be amended, modified, replaced, refinanced and in effect from time to time.

"Event of Default" shall have the meaning set forth in Section 7 of this Note.

"Final DIP Order" means a final order of the Bankruptcy Court, in form and substance reasonably satisfactory to the Required Holders, entered in the Chapter 11 Cases approving the DIP Loan Documents and the transactions contemplated thereby.

"Governmental Authority" shall have the meaning assigned to such term in the Senior Note Purchase Agreement.

"Holders" has the meaning assigned to such term in the Senior Note Purchase Agreement.

"Guarantors" means each Person, other than the Maker, that executes the Security Agreement in favor of the Collateral Agent.

"Intercompany Note Pledge Agreement" shall mean that certain Pledge Agreement, dated as of the date hereof, among Lender and Senior Non-DIP Agent.

"Interest Payment Date" shall have the meaning set forth in Section 2(b) of this Note.

"Interim DIP Order" means an interim order of the Bankruptcy Court, in form and substance reasonably satisfactory to the Required Holders, entered in the Chapter 11 Cases approving the DIP Loan Documents and the transactions contemplated thereby.

"Lien" shall have the meaning assigned to such term in the Senior Note Purchase Agreement.

"Maturity Date" shall have the meaning set forth in Section 1(e) of this Note.

"Net Proceeds" shall have the meaning assigned to such term in the Security Agreement.

"Obligations" shall mean this Note and all other indebtedness, advances, debts, liabilities, obligations, covenants and duties owing by any Transaction Party to the Lender, the Collateral Agent or any other Person required to be indemnified, that arises under any Transaction Document, whether or not for the payment of money, whether arising by reason of an extension of credit, loan, guaranty, indemnification or in any other manner, whether direct or indirect (including those acquired by assignment), absolute or contingent, due or to become due, now existing or hereafter arising and however acquired, or whether or not allowed in any bankruptcy or similar proceeding.

"Permitted Lien" shall have the meaning assigned to such term in the Senior Note Purchase Agreement.

"Person" means any individual, sole proprietorship, partnership, joint venture, trust, unincorporated organization, association, corporation, limited liability company, limited liability partnership, institution, public benefit corporation, other entity or Governmental Authority (whether federal, state, county, city, municipal, local, foreign, or otherwise, including any instrumentality, division, agency, body or department thereof).

"PIK Interest" shall have the meaning set forth in Section 2(a) of this Note.

"Purchasers" shall have the meaning assigned to such term in the Senior Note Purchase Agreement.

"Required Holders" shall have the meaning assigned to such term in the Senior Note Purchase Agreement.

"Security Agreement" means the [Second Lien] Guaranty and Security Agreement of even date herewith entered into by and between the Collateral Agent and each Transaction Party that is a signatory thereto, as amended, restated, supplemented and modified from time to time in accordance with the terms thereof.

"Senior DIP Agent" shall have the meaning set forth in the definition of "Senior Note Purchase Agreement".

"Senior Non-DIP Agent" shall have the meaning set forth in the definition of "Dutch Note Purchase Agreement".

"Senior Non-DIP Holders" shall have the meaning assigned to the term "Holders" in the Dutch Note Purchase Agreement.

"Senior Non-DIP Purchasers" shall have the meaning assigned to the term "Purchasers" in the Dutch Note Purchase Agreement.

"Senior Non-DIP Required Holders" shall have the meaning assigned to the term "Required Holders" in the Dutch Note Purchase Agreement.

"Senior Non-DIP Transaction Documents" shall have the meaning assigned to the term "Transaction Documents" in the Dutch Note Purchase Agreement.

"Senior Note Purchase Agreement" means that certain Note Purchase and Guaranty Agreement, dated as of the date hereof, among Maker, certain guarantors party thereto, certain purchasers party thereto and Cantor Fitzgerald Securities, as administrative and collateral agent (the "Senior DIP Agent"), as the same shall be amended, restated or otherwise modified and in effect from time to time.

"Subsidiaries" shall mean, with respect to any Person, any corporation, partnership, joint venture, limited liability company, association or other entity, the management of which is, directly or indirectly, controlled by, or of which an aggregate of more than 50% of the voting Stock is, at the time, owned directly or indirectly by, such Person or one or more Subsidiaries of such Person.

"Transaction Documents" means this Note, the Security Agreement, and all other agreements and instruments executed and delivered by or on behalf of any Transaction Party to, or in favor of, the Lender and/or Collateral Agent in connection therewith.

"Transaction Parties" means the Maker and each Guarantor.

"US Dollars" or "US$" means the lawful currency of the United States of America.