## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- x
                                         :
In re:                                   :   Chapter 11
                                         :
REICHHOLD HOLDINGS US, INC., et al.,     :   Case No. 14-12237 (MFW)
                                         :
              Debtors.[1]                :   Jointly Administered
                                         :
------------------------------------------------------- x
```

### SECOND AMENDED PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11
### OF THE BANKRUPTCY CODE PROPOSED BY THE DEBTORS

Nothing contained herein shall constitute an offer, an acceptance or a legally binding obligation of the Debtors or any other party in interest. This Plan is subject to approval of the Bankruptcy Court and other customary conditions. This Plan is not an offer with respect to any securities. This is not a solicitation of acceptances or rejections of the Plan. Acceptances or rejections with respect to this Plan may not be solicited until a disclosure statement has been approved by the United States Bankruptcy Court for the District of Delaware in accordance with section 1125 of the Bankruptcy Code. Such a solicitation will only be made in compliance with applicable provisions of securities and bankruptcy laws. You should not rely on the information contained in, or the terms of, this Plan for any purpose (including in connection with the purchase or sale of the Debtors' securities) prior to the confirmation of this Plan by the Bankruptcy Court.

**COLE SCHOTZ P.C.**
Norman L. Pernick (I.D. No. 2290)
Marion M. Quirk (I.D. No. 4136)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

- and -

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Reichhold Holdings US, Inc. (5768), Reichhold Liquidation, Inc. (f/k/a Reichhold, Inc.) (4826), Canadyne Corporation (7999), and Canadyne-Georgia Corporation (7170). The street address for the Debtors is 1035 Swabia Ct., Durham, NC 27703.

Gerald H. Gline
Felice R. Yudkin
25 Main Street
Hackensack, NJ 07602-0800
Telephone: (201) 489-3000
Facsimile: (201) 489-1536

*Counsel for Debtors and
Debtors in Possession*

Dated: November 19, 2015

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................... 1

ARTICLE I DEFINITIONS AND RULES OF INTERPRETATION ............................ 1
    A.    Rules of Construction .................................................................................1
    B.    Definitions .................................................................................................2
    C.    Rules of Interpretation ..............................................................................18
    D.    Computation of Time ................................................................................18
    E.    Governing Law .........................................................................................18

ARTICLE II CLASSIFICATION OF CLAIMS AND INTERESTS ............................ 18
    A.    Introduction ..............................................................................................18
    B.    Unclassified Claims ..................................................................................19
        1.    Administrative Claims ................................................................. 19
        2.    Priority Tax Claimsscribed in 11 U.S.C. § 1129(a)(9)(D)) ...... 19
    C.    Unimpaired Classes of Claims ................................................................19
        1.    Class 1:  Secured Claims............................................................. 19
        2.    Class 2:  Priority Non-Tax Claims ............................................. 19
    D.    Impaired Classes of Claims ......................................................................19
        1.    Class 3:  General Unsecured Claims ........................................... 19
        2.    Class 4: Convenience Claims ...................................................... 19
    E.    Impaired Class of Claims .........................................................................19
        1.    Class 5:  Intercompany Claims .................................................... 19
    F.    Impaired Classes of Interests ...................................................................19
        1.    Class 6:  Interests ........................................................................ 19

ARTICLE III TREATMENT OF CLAIMS AND INTERESTS ................................... 20
    A.    Unclassified Claims ..................................................................................20
        1.    Administrative Claims ................................................................. 20
        2.    Priority Tax Claims...................................................................... 20
    B.    Unimpaired Claims ...................................................................................20
        1.    Class 1:  Secured Claims............................................................. 20
        2.    Class 2:  Priority Non-Tax Claims ............................................. 21
    C.    Impaired Claims........................................................................................21
        1.    Class 3:  General Unsecured Claims ........................................... 21
        2.    Class 4: Convenience Claims ...................................................... 21
        3.    Class 5:  Intercompany Claims .................................................... 22
    D.    Interests ....................................................................................................22
        1.    Class 6:  Interests ........................................................................ 22
    E.    Special Provision Regarding Unimpaired Claims ...................................22
    F.    Allowed Claims ........................................................................................22
    G.    Special Provisions Regarding Insured Claims........................................22
        1.    Limitation on Amounts to Be Distributed to Holders of Allowed Insured Claims (other than Insured Asbestos Claims).......................................... 22

52719/0001-11906966v12

|   |   | 2. | Resolution of Asbestos Claims by the Liquidating Trust | 23 |
|   |   | 3. | Limitations on Effect of Bankruptcy | 24 |

**ARTICLE IV ACCEPTANCE OR REJECTION OF THE PLAN** ........................................ 24

| A. | Acceptance by an Impaired Class | 24 |
| B. | Presumed Acceptances by Unimpaired Classes | 24 |
| C. | Classes Deemed to Reject Plan | 24 |
| D. | Impaired Classes of Claims Entitled to Vote | 24 |
| E. | Elimination of Vacant Classes | 25 |
| F. | Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code | 25 |

**ARTICLE V MEANS FOR IMPLEMENTATION OF THE PLAN** .................................... 25

| A. | Substantive Consolidation | | 25 |
|   | 1. | Consolidation of the Chapter 11 Estates | 25 |
|   | 2. | Substantive Consolidation Order | 26 |
| B. | Corporate Action | | 26 |
|   | 1. | Deemed Mergers of Debtors | 26 |
|   | 2. | Continued Corporate Existence | 26 |
|   | 3. | Cancellation of Existing Securities and Agreements | 27 |
|   | 4. | No Further Action | 28 |
|   | 5. | Effectuating Documents; Further Transactions | 28 |
| C. | Retiree Committee | | 28 |
| D. | Creditors' Committee and Liquidating Trust Committee | | 29 |
|   | 1. | Dissolution of the Committee | 29 |
|   | 2. | Creation of Liquidating Trust Committee and Procedures Related Thereto | 29 |
|   | 3. | Standing of the Liquidating Trust Committee | 29 |
|   | 4. | Function and Duration of the Liquidating Trust Committee | 29 |
|   | 5. | Indemnification of Liquidating Trustee and Liquidating Trust Committee | 29 |
|   | 6. | Recusal of Liquidating Trust Committee Members | 30 |
| E. | The Liquidating Trust | | 30 |
|   | 1. | Establishment and Administration of the Liquidating Trust | 30 |
|   | 2. | Assets of the Liquidating Trust | 31 |
|   | 3. | Other Funds to be Transferred to the Liquidating Trust | 31 |
|   | 4. | Rights and Powers of the Liquidating Trust and the Liquidating Trustee | 31 |
|   | 5. | Liquidating Trust Interests | 32 |
|   | 6. | Appointment of a Liquidating Trustee | 33 |
|   | 7. | Distributions to Holders of General Unsecured Claims | 33 |
|   | 8. | Distributions to Holders of Administrative and Priority Claims | 34 |
|   | 9. | Reporting Requirement of Liquidating Trust | 35 |
| F. | Limited Revesting of Remaining Assets | | 35 |
| G. | Limited Release of Liens | | 35 |
| H. | Accounts and Reserves | | 35 |
|   | 1. | Professional Fee Reserve | 35 |
|   | 2. | Administrative Claims Reserve | 35 |

3.      Other Reserves ................................................................. 36
I.      Exemption from Certain Transfer Taxes ........................................36
J.      Applicability of Sections 1145 and 1125(e) of the Bankruptcy Code ..................36
        1.      Issuance of New Common Stock ............................................ 36
        2.      Issuance of Liquidating Trust Interests ....................................... 37
K.      Preservation of Causes of Action ..............................................37
        1.      Liquidating Trust Causes of Action .................................... 37
        2.      Products Insurance Causes of Action ...................................... 38
L.      Effectuating Documents; Further Transactions ................................38

ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS ................................ 38
A.      Distributions for Claims Allowed as of the Effective Date .....................38
B.      Disbursing Agent .........................................................39
C.      Delivery of Distributions and Undeliverable or Unclaimed Distributions ...........39
        1.      Delivery of Distributions in General ................................... 39
        2.      Undeliverable and Unclaimed Distributions................................ 40
D.      Means of Cash Payment....................................................40
E.      Interest on Claims .........................................................41
F.      Withholding and Reporting Requirements .....................................41
G.      Setoffs .................................................................41
H.      Procedure for Treating and Resolving Disputed, Contingent and/or
        Unliquidated Claims ......................................................42
        1.      Objection Deadline; Prosecution of Objections........................... 42
        2.      No Distributions Pending Allowance ................................... 42
        3.      Disputed Claims Reserves ............................................ 43
        4.      Distributions After Allowance ......................................... 43
        5.      De Minimis Distributions ............................................ 43
        6.      Fractional Cents ..................................................... 44
        7.      Allocation of Plan Distributions Between Principal and Interest............ 44
        8.      Distribution Record Date ............................................. 44

ARTICLE VII TREATMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES ............................................................ 44
A.      Rejected Contracts and Leases..............................................44
B.      Products Insurance Policies .................................................45
C.      Director and Officer Insurance Policies and Agreements........................45
D.      Assumption and Assignment of Executory Contracts ..........................45
E.      Rejection Damages Bar Date ...............................................45
F.      Indemnification Obligations ................................................45
G.      Retiree Benefits...........................................................46

ARTICLE VIII CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THE PLAN ..................................................... 46
A.      Conditions to Confirmation ................................................46
B.      Conditions to Effective Date................................................47
C.      Waiver of Conditions......................................................47

52719/0001-11906966v12

ARTICLE IX ALLOWANCE AND PAYMENT OF CERTAIN
ADMINISTRATIVE CLAIMS ...................................................................... 48
 A. Professional Fee Claims..........................................................48
  1. Final Fee Applications ................................................. 48
  2. Employment of Professionals after the Effective Date............ 48
  3. Senior Secured Notes Trustee Fees........................................ 48
 B. Other Administrative Claims ...................................................48

ARTICLE X EFFECTS OF CONFIRMATION ............................................... 49
 A. Compromise and Settlement of Claims and Controversies ..............49
 B. Binding Effect..........................................................................49
 C. Discharge of the Debtors ..........................................................49
 D. Releases..................................................................................49
  1. Releases by the Debtors ............................................. 49
 E. Exculpation and Limitation of Liability .....................................50
 F. Injunction ...............................................................................51
 G. The Automatic Stay .................................................................51
 H. Compromises and Settlements...................................................52
 I. Satisfaction of Subordination Rights ..........................................52
 J. ERISA Claims.........................................................................52

ARTICLE XI RETENTION OF JURISDICTION............................................. 53
 A. Retention of Jurisdiction by the Court .......................................53
 B. Retention of Non-Exclusive Jurisdiction by the Court ..................55
 C. Failure of Court to Exercise Jurisdiction ...................................55

ARTICLE XII MISCELLANEOUS PROVISIONS .......................................... 55
 A. Modifications and Amendments.................................................55
 B. Severability of Plan Provisions..................................................55
 C. Successors and Assigns.............................................................56
 D. Payment of Statutory Fees ........................................................56
 E. Revocation, Withdrawal or Non-Consummation ..........................56
 F. Service of Documents ...............................................................56
 G. Plan Supplement(s) ..................................................................58

iv

## TABLE OF EXHIBITS

| Exhibit | Title |
|---------|-------|
| A | Liquidating Trust Agreement |
| B | Amended and Restated Certificate of Incorporation of Liquidating Reichhold |
| C | Amended and Restated Bylaws of Liquidating Reichhold |
| D | Products Insurance Cooperation Agreement |
| E | Executory Contracts to be Assumed and/or Assumed and Assigned |
| F | Causes of Action |

**Note:  To the extent that the foregoing Exhibits are not attached to this Plan, such Exhibits will be filed with the Court in Plan Supplement(s) filed on or before the date(s) set for filing the Plan Supplement.**

52719/0001-11906966v12

## INTRODUCTION[2]

Reichhold Holdings US, Inc., Reichhold Liquidation, Inc. (f/k/a Reichhold, Inc), Canadyne Corporation and Canadyne-Georgia Corporation, the debtors and debtors-in-possession in the above-captioned Chapter 11 Cases, propose the following plan of liquidation. The Plan contemplates the liquidation of the Debtors and the resolution of outstanding Claims against and Interests in the Debtors pursuant to section 1121(a) of the Bankruptcy Code. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

For a discussion of the Debtors' history, businesses, properties, operations, the Chapter 11 Cases, risk factors, a summary of this Plan and certain other related matters, reference is hereby made to the Disclosure Statement that is being distributed herewith. In the event of any inconsistencies between the Plan and the Disclosure Statement, the terms and provisions of the Plan shall control.

All Holders of Claims that are eligible to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019 and Article XII.A of this Plan, the Debtors reserve the right to alter, amend, modify (one or more times), revoke or withdraw the Plan prior to its substantial consummation.

## ARTICLE I

## DEFINITIONS AND RULES OF INTERPRETATION

### A.    Rules of Construction

For purposes of this Plan, except as expressly provided herein or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I of this Plan or any Exhibit thereto. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

---

[2]    Capitalized terms used in this Introduction shall have the meanings ascribed to such terms in Article I hereof.

52719/0001-11906966v12

**B.**      **Definitions**

  **1.1**  **"503(b)(9) Claim"** means a Claim arising under section 503(b)(9) of the Bankruptcy Code against the Debtors, which was to be filed against the Debtors on or before the 503(b)(9) Claims Bar Date.

  **1.2**  **"503(b)(9) Claims Bar Date"** means March 9, 2015 at 5:00 p.m. (Eastern Time) as established by the Bar Date Order.

  **1.3**  **"Administrative Claim"** means a Claim for payment of an administrative expense of a kind specified in sections 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority in payment under sections 507(a)(2) or 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises) and Claims by Governmental Units for taxes accruing after the Petition Date (but excluding Claims related to taxes accruing on or before the Petition Date); (b) Professional Fee Claims; (c) all fees and charges assessed against the Estates under 28 U.S.C. § 1930; (d) obligations designated as Administrative Claims pursuant to an order of the Court; and (e) Claims under section 503(b)(9) of the Bankruptcy Code.

  **1.4**  **"Administrative Claims Bar Dates"** means for Administrative Claims, other than Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code and Professional Fee Claims: (a) March 9, 2015 at 5:00 p.m. (Eastern Time), for Administrative Claims that accrued for the period from the Petition Date through December 31, 2014; (b) July 10, 2015 at 5:00 p.m. (Eastern Time) for Administrative Claims that accrued for the period from January 1, 2015 through April 1, 2015; and (c) for Administrative Claims that accrued from April 2, 2015 through the Effective Date of the Plan, the date that falls on the thirtieth day (30th) day following the Effective Date, in each case by which the Holders of Administrative Claims shall File with the Claims Agent and serve on the Debtors or the Liquidating Trustee, as applicable, requests for payment, in writing, together with supporting documents, substantially complying with the Bar Date Order, the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

  **1.5**  **"Administrative Claims Objection Deadline"** means the deadline for filing objections to requests for payment of Administrative Claims filed on or before the Administrative Claims Bar Dates, which shall be 120 days after the Effective Date, unless otherwise extended by order of the Court.

  **1.6**  **"Administrative Claims Reserve"** means the reserve of Cash funded by the Debtors and maintained by the Liquidating Trust in an escrow account for the benefit of Holders of Allowed Administrative Claims (exclusive of Holders of Professional Fee Claims, the reserve for which Holders shall be the Professional Fee Reserve), Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims in an amount equal to the Administrative and Priority Claims Estimate.

52719/0001-11906966v12

**1.7** **"Administrative and Priority Claims Estimate"** means, as of the Effective Date, the estimated amount, exclusive of Professional Fee Claims, of all unpaid Claims that will be Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims.

**1.8** **"Affiliate"** means **"affiliate"** as defined in section 101(2) of the Bankruptcy Code.

**1.9** **"Affiliate Debtor"** means all of the Debtors, except for Reichhold.

**1.10** **"Allowed"** means, when used in reference to a Claim within a particular Class, an Allowed Claim in the specified Class or of a specified type.

**1.11** **"Allowed Claim"** means a Claim or any portion thereof (a) that has been allowed by a Final Order of the Court, (b) that either (x) has been Scheduled as a liquidated, non-contingent and undisputed Claim in an amount greater than zero in the Schedules, or (y) is the subject of a timely filed Proof of Claim and, as to both (x) and (y), either (i) no objection to its allowance has been filed (either by way of objection or amendment to the Schedules) on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Court or (ii) any objection to its allowance has been settled, waived through payment or withdrawn, or has been denied by a Final Order, or (c) that is expressly allowed in a liquidated amount (x) in the Plan or (y) after the Effective Date, by the Liquidating Trustee in writing; provided, however, that with respect to an Administrative Claim, "Allowed Claim" means an Administrative Claim as to which a timely written request for payment has been made in accordance with applicable bar dates for such requests set by the Court (if such written request is required) in each case as to which (a) the Debtors or the Liquidating Trustee, as applicable, or any other party in interest (x) has not filed an objection on or before the Administrative Claims Objection Deadline or the expiration of such other applicable period fixed by the Court or (y) has interposed a timely objection and such objection has been settled, waived through payment or withdrawn, or has been denied by Final Order, or (b) after the Effective Date, the Liquidating Trustee has expressly allowed in a liquidated amount in writing.  For purposes of computing Distributions under this Plan, a Claim that has been deemed "Allowed" shall not include interest, fees, costs or charges on such Claim from and after the Petition Date, except as provided in section 506(b) of the Bankruptcy Code or as otherwise expressly set forth in this Plan.

**1.12** **"Asbestos Books and Records"** means asbestos-related books and records of the Debtors, including computer generated or computer maintained books and records and computer maintained books and records and computer data, as well as electronically generated or maintained books and records or date, along with books and records of any Debtor maintained by or in the possession of third parties, wherever located.

**1.13** **"Asbestos Claim"** means any Claim against, or any debt, liability, or obligation of, the Debtors, whether in the nature of or sounding in tort, or under contract, warranty, or any other theory of law, equity, or admiralty for, arising out of, or resulting from, directly or indirectly, death, bodily injury, sickness, disease, or any other actual or

alleged personal injury, physical, emotional or otherwise, to persons, caused, or allegedly caused, directly or indirectly, by the presence of, or exposure to asbestos—including, without limitation, asbestos-containing products, equipment, components, parts, improvements to real property, or materials engineered, designed, marketed, manufactured, fabricated, constructed, sold, supplied, produced, installed, maintained, serviced, specified, selected, repaired, removed, replaced, released, distributed, or in any other way used by the Debtors or any other Entity for whose products or operations the Debtors have liability or are alleged to have liability - to the extent arising, directly or indirectly, from acts, omissions, business, or operations of the Debtors (including the acts, omissions, business, or operations of any other Entity for whose products or operations the Debtors have liability, to the extent of the Debtors liability for such acts, omissions, business, or operations) (including any acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of the Debtors or any other Entity for whose products or operations the Debtors have liability or are alleged to have liability, or any conduct for which the Debtors, or any other Entity for whose products or operations the Debtors have liability or is alleged to have liability, may be deemed to have strict liability under any applicable law) including all related claims, debts, obligations, or liabilities for compensatory damages (such as loss of consortium, medical monitoring, personal or bodily injury, wrongful death, survivorship, proximate, consequential, general, and special damages).  Notwithstanding the foregoing, a Claim shall only be an Asbestos Claim to the extent of the Debtor's liability for that Claim.  For the purpose of this definition, Asbestos Claim does not include (i) any Claim or demand by any present or former employee of the Debtors for benefits under a policy of workers' compensation insurance or for benefits under any state or federal workers' compensation statute or other statute providing compensation to an employee from an employer or (ii) any Claim for loss of or damage to property.

**1.14**    **"Avoidance Actions"** means any and all claims and Causes of Action of the Debtors arising under chapter 5 of the Bankruptcy Code, including, without limitation, sections 544, 545, 547, 548, 549 and 550 thereof or their state law analogs.

**1.15**    "**Ballot**" means each of the ballot or master ballot forms distributed with the Disclosure Statement to Holders of Impaired Claims entitled to vote under Article IV.D hereof in connection with the solicitation of acceptances of the Plan.

**1.16**    **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to these Chapter 11 Cases.

**1.17**    **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms and the Local Rules, as each has been, or may be, amended from time to time, to the extent that any such amendment is applicable to these Chapter 11 Cases.

**1.18**    **"Bar Date"** means, with respect to any particular Claim, the specific date set by the Court as the last day for Filing Proofs of Claim against the Debtors or requests in these Chapter 11 Cases for that specific Claim.

**1.19**    **"Bar Date Order"** means the Order (I) Establishing Bar Date for Filing Claims Against the Debtor and (II) Approving Form and Manner of Notices Thereof [Docket No. 536].

**1.20**    **"Books and Records"** means any and all books and records of the Debtors, including computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of any Debtor maintained by or in the possession of third parties, wherever located.

**1.21**    **"Business Day"** means any day, other than a Saturday, Sunday or a legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

**1.22**    **"Cash"** means legal tender of the United States of America or equivalents thereof.

**1.23**    **"Causes of Action"** means any and all claims, actions, proceedings, causes of action, Avoidance Actions, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and Claims, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Bankruptcy Cases, through and including the Effective Date, that any Debtor and/or Estate may hold against any Person.

**1.24**    **"Chapter 11 Cases"** means the chapter 11 cases commenced by the Debtors and jointly administered under case number 14-12237 (MFW) in the Court.

**1.25**    **"Claim"** means a claim against any Debtor, whether or not asserted, as such term is defined in section 101(5) of the Bankruptcy Code.

**1.26**    **"Claimholder"** means the holder of a Claim.

**1.27**    **"Claims Agent"** means Logan and Company, or any successor thereto.

**1.28**    **"Claims Objection Deadline"** means the last day for filing objections to Claims (other than Disallowed Claims for which no objection or request for estimation is required), which day shall be one hundred and eighty (180) days after the Effective Date, or such later date as may be ordered by the Court.

**1.29**    **"Class"** means each category or group of Holders of Claims or Interests that has been designated as a class in Article III of this Plan.

**1.30**    **"Collateral"** means any property or interest in property of a Debtor's Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.31**    **"Committee"** means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases.

**1.32**    **"Confirmation"** means the entry of the Confirmation Order, subject to all conditions specified in Article VIII.A having been satisfied or waived pursuant to Article VIII.C.

**1.33**    **"Confirmation Date"** means the date of entry of the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

**1.34**    **"Confirmation Hearing"** means the hearing(s) before the Court to consider confirmation of the Plan and related matters pursuant to section 1128 of the Bankruptcy Code, as such hearing(s) may be adjourned or continued from time to time.

**1.35**    **"Confirmation Order"** means the order entered by the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.36**    **"Consummation"** means the occurrence of the Effective Date.

**1.37**    **"Contingent"** means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

**1.38**    **"Convenience Claim"** means any Claim that would otherwise be a General Unsecured Claim that is (i) greater than $0 and less than or equal to $9,999 in Allowed amount or (ii) greater than $9,999 in Allowed amount, and is irrevocably reduced to $9,999 at the election of the holder of the Claim as evidenced on the Ballot submitted by such holder; provided, however, that a General Unsecured Claim may not be subdivided into multiple claims of $9,999 or less for purposes of receiving treatment as a Convenience Class Claim.

**1.39**    **"Convenience Claim Election"** means the election by a Holder of a General Unsecured Claim that has voted in favor of the Plan to be treated as a Holder of a Class 4 Convenience Claim.

**1.40**    **"Convenience Class Reserve"** means the reserve of Cash funded by the Debtors and maintained by the Liquidating Trust in an escrow account for the benefit of Holders of Allowed Convenience Claims in an amount equal to the Convenience Claims Estimate.

**1.41**    **"Convenience Claims Estimate"** means, as of the Effective Date, the estimated amount to be distributed on account of all unpaid Convenience Claims that will be Allowed Convenience Claims.

**1.42**    **"Court"** means the United States Bankruptcy Court for the District of Delaware or such other court as may have jurisdiction over the Chapter 11 Cases.

6

1.43    **"Creditor"** means any Person that holds a Claim against one or more of the Debtors.

1.44    **"Debtors"** means, collectively, Reichhold, Reichhold Holdings US, Inc., Canadyne Corporation and Canadyne-Georgia Corporation.

1.45    **"Disallowed"** means when used in reference to a Claim, a Claim, or any portion thereof, that (a) has been disallowed by a Final Order, (b) is Scheduled at zero or as contingent, disputed or unliquidated and as to which no Proof of Claim has been field by the Bar Date or deemed timely filed with the Court pursuant to either the Bankruptcy Code or any Final Order or under applicable law, (c) is not Scheduled, and as to which (i) no Proof of Claim has been filed by the Bar Date or deemed timely filed with the Court pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (ii) no request for payment of an Administrative Claim has been filed by the Administrative Claims Bar Dates or deemed timely filed with the Court pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (d) after the Effective Date, has been disallowed in a written agreement by and between the Liquidating Trustee and the Holder of such Claim.

1.46    **"Disbursing Agent"** means (a) on or prior to the Effective Date, the Debtors, and (b) after the Effective Date, the Liquidating Trustee; provided, however, that the Debtors or the Liquidating Trustee may, in their discretion, retain a third party to act as Disbursing Agent; and provided, further, as set forth in Article VI.B hereof, all Distributions to Holders of Senior Secured Noteholder Claims shall be made to the Senior Secured Notes Trustee for distribution in accordance with the Senior Secured Notes Indenture.

1.47    **"Disclosure Statement"** means the written disclosure statement (including all exhibits and schedules thereto) that relates to the Plan, as the same may be amended, supplemented, revised or modified from time to time, as approved by the Court pursuant to the Disclosure Statement Approval Order.

1.48    **"Disclosure Statement Approval Order"** means the Final Order approving, among other things, the adequacy of the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code.

1.49    **"Disputed"** means, when used in reference to a Claim, a Claim, or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim.

1.50    **"Disputed Claim Amount"** means (a) if a liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) the liquidated amount set forth in the Proof of Claim relating to a Disputed Claim; (ii) an amount agreed to by the Debtors or the Liquidating Trustee, as applicable, and the Holder of such Disputed Claim; or (iii) if a request for estimation is filed by any party, the amount at which such Claim is estimated by the Court; or (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) an amount agreed to by the Debtors or the Liquidating Trustee, as

7

applicable, and the Holder of such Disputed Claim or (ii) the amount estimated by the Court with respect to such Disputed Claim; or (c) if the Claim is a Disallowed Claim, zero.

1.51    **"Disputed Claims Reserve"** means the reserve established and maintained by the Liquidating Trust pursuant to and in accordance with the terms of the Liquidating Trust Agreement for the payment of Disputed General Unsecured Claims that become Allowed Claims after the Effective Date.  The Disputed Claims Reserve need not be maintained by the Liquidating Trust in a segregated account.

1.52    **"Distribution"** means the distributions to be made by the Disbursing Agent in accordance with the Plan of, as the case may be: (a) Cash or (b) any other consideration or residual value distributed to Holders of Allowed Claims under the terms and provisions of the Plan.

1.53    **"Distribution Record Date"** means the record date for the purpose of determining Holders of Allowed Claims entitled to receive Distributions under the Plan on account of Allowed Claims, which date shall be the Confirmation Date or such other date designated in the Confirmation Order or any subsequent Court order.

1.54    **"DTC"** means The Depository Trust Company.

1.55    **"Effective Date"** means the first Business Day, or such later date as agreed to by the Debtors and the Committee, on which all conditions to the consummation of the Plan set forth in Article VIII.B hereof have been satisfied or waived in accordance with Article VIII.C.

1.56    **"Entity"** has the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

1.57    **"Environmental Claim"** any Claim relating to alleged hazardous materials, hazardous substances, contamination, pollution, waste, fines or mine or mill tailings released, threatened to be released or present in the environment or ecosystem, including without limitation, alleged contamination under federal or state environmental laws, codes, orders or regulations, common law, as well as any entitlements to equitable remedies, including, without limitation, investigation, restoration, natural resource damages, reclamation, remediation and cleanup, including without limitation, any Environmental Claim by a governmental unit; provided, however, for the avoidance of doubt, the term "Environmental Claim" shall not include or pertain to any Asbestos Claim.

1.58    **"Estate(s)"** means, individually, the estate of any Debtor in these Chapter 11 Cases and, together, the estates of the Debtors created under section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases on the Petition Date.

1.59    **"Executory Contract"** means a contract to which the Debtor is a party that is subject to assumption or rejection under 365 of the Bankruptcy Code.

1.60    **"Exchange"** means the exchange described in Article III.D.1 of the Disclosure Statement, whereby Senior Secured Noteholders representing 99.1% of the total

8

outstanding notes exchanged their Senior Secured Notes with a face value of approximately $104 million for 99.1% of the equity of Reichhold Holdings International B.V., Reichhold Industries Limited, and Reichhold, LLC (f.k.a. Reichhold Acquisitions Holdings, LLC).

     **1.61**     **"Exchange Effective Date"** mean April 1, 2015.

     **1.62**     **"Exhibit"** means an exhibit either attached to this Plan or attached as an appendix to the Disclosure Statement.

     **1.63**     **"Face Amount"** means (i) when used in reference to a Disputed or Disallowed Claim, the Disputed Claim Amount, and (ii) when used in reference to an Allowed Claim, the Allowed amount of such Claim.

     **1.64**     **"File," "Filed"** or **"Filing"** means, respectively, file, filed or filing with the Court or its authorized designee in these Chapter 11 Cases.

     **1.65**     **"Final Order"** means an order of the Court (x) as to which the time to appeal, petition for certiorari, or move for reargument, rehearing or new trial has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument, rehearing or new trial shall then be pending; (y) as to which any right to appeal, petition for certiorari, reargue, rehear or retry shall have been waived in writing; or (z) in the event that an appeal, writ of certiorari, reargument, rehearing or new trial has been sought, as to which (i) such order of the Court shall have been affirmed by the highest court to which such order is appealed, (ii) certiorari has been denied as to such order, or (iii) reargument or rehearing or new trial from such order shall have been denied, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing or new trial shall have expired without such actions having been taken.

     **1.66**     **"General Bar Date"** means March 9, 2015 at 5:00 p.m. (Eastern Time) for certain Claims arising before the Petition Date, including General Unsecured Claims, Priority Non-Tax Claims and 503(b)(9) Claims, as established by the Bar Date Order.

     **1.67**     **"General Unsecured Claim"** means a Claim against any or all of the Debtors that is not an Administrative Claim, Priority Tax Claim, Secured Claim, Priority Non-Tax Claim, Convenience Claim, Intercompany Claim, Subordinated 510(b) Claim or Subordinated 510(c) Claim.

     **1.68**     **"Governmental Unit"** has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

     **1.69**     "GUC Cash" means $1,500,000, which, prior to the Effective Date, is being held by Hahn and Hessen for the benefit of Allowed General Unsecured Claims.

     **1.70**     **"Hahn and Hessen"** means Hahn and Hessen LLP, the Committee's counsel.

     **1.71**     **"Holder"** means an Entity holding a Claim, Interest or Liquidating Trust Interest.

9

**1.72** **"Impaired"** means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.73** **"Impaired Class"** means a Class of Claims or Interests that is Impaired.

**1.74** **"Indemnified Person"** means the (i) the Liquidating Trustee, (ii) Liquidating Trust Committee, (iii) members of the Liquidating Trust Committee in their capacities as such, and (iv) with respect to any of the foregoing, any such Person's current equity holders, including shareholders, partnership interest holders and limited liability company unit holders, Affiliates, partners, subsidiaries, members, officers, directors, managers serving on a board of managers, principals, employees, agents, managed funds, advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals, together with their respective predecessors, successors and assigns (in each case, solely in their capacity as such).

**1.75** **"Initial Distribution Date"** means the Effective Date or the date, occurring as soon as practicable after the Effective Date, on which the initial Distributions are made to Holders of Allowed Claims.

**1.76** **"Insider"** has the meaning ascribed to such term in section 101(31) of the Bankruptcy Code.

**1.77** **"Insured Asbestos Claim"** means that portion of any Asbestos Claim arising out of an incident or occurrence alleged to have occurred prior to the Effective Date: (i) as to which any Products Insurance Carrier is obligated pursuant to the terms, conditions, limitations, and exclusions of any Products Insurance Policy and/or applicable non-bankruptcy law, to pay any judgment, settlement, or contractual obligation with respect to the Debtor(s), or (ii) that any Products Insurance Carrier otherwise agrees to pay as part of a settlement or compromise of a claim made under the applicable Products Insurance Policy.

**1.78** **"Insured Claim"** means that portion of any Claim (other than an Insured Asbestos Claim) arising out of an incident or occurrence alleged to have occurred prior to the Effective Date: (i) as to which any Insurer is obligated pursuant to the terms, conditions, limitations, and exclusions of any Insurance Policy (except for Products Insurance Policies) and/or applicable non-bankruptcy law, to pay any judgment, settlement, or contractual obligation with respect to the Debtor(s), or (ii) that any Insurer otherwise agrees to pay as part of a settlement or compromise of a claim made under the applicable Insurance Policy (except for Products Insurance Policies).

**1.79** **"Insurer"** means any company or other entity that issued, or is responsible for, an Insurance Policy under which any of the Debtors could have asserted or did assert, or may in the future assert, a right to coverage for any claim.

**1.80** **"Insurance Policy"** means any policy of insurance and related agreements under which any of the Debtors could have asserted or did assert, or may in the future assert, a right to coverage for any claim.

10

**1.81**      **"Insurance Proceeds"** means any recovery from an Insurance Policy by the Debtors or other person or entity on account of or with respect to an Insured Claim.

**1.82**      **"Intercompany Claims"** means any Claim held by a Debtor against another Debtor, including, without limitation: (i) any account reflecting intercompany book entries by a Debtor with respect to another Debtor, (ii) any Claim not reflected in such book entries that is held by a Debtor against another Debtor, and (iii) any derivative Claim asserted by or on behalf of one Debtor against another Debtor.

**1.83**      **"Interests"** means the legal interests, equitable interests, contractual interests, equity interests or ownership interests, or other rights of any Person in the Debtors, including all capital stock, stock certificates, common stock, preferred stock, partnership interests, limited liability company or membership interests, rights, treasury stock, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in the Debtors, partnership interests in the Debtors' stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights, subscription rights and liquidation preferences, puts, calls, awards or commitments of any character whatsoever relating to any such equity, common stock, preferred stock, ownership interests or other shares of capital stock of the Debtors or obligating the Debtors to issue, transfer or sell any shares of capital stock whether or not certificated, transferable, voting or denominated stock or a similar security.

**1.84**      **"IRS"** means the Internal Revenue Service.

**1.85**      **"Lien"** has the meaning ascribed to such term in section 101(37) of the Bankruptcy Code.

**1.86**      **"Liquidating Reichhold"** means the Debtors, on and after the Effective Date.

**1.87**      **"Liquidating Trust"** means the trust described in Article V.F of the Plan to be established under Delaware trust law that shall effectuate the wind down of the Debtors and make Distributions pursuant to the terms of the Plan and Liquidating Trust Agreement.  With respect to any action required or permitted to be taken by the Liquidating Trust, the term includes the Liquidating Trustee or any other person authorized to take such action in accordance with the Liquidating Trust Agreement.

**1.88**      **"Liquidating Trust Agreement"** means the agreement, substantially in the form attached hereto as Exhibit A, establishing the Liquidating Trust in conformity with the provisions of the Plan, which shall be approved in the Confirmation Order and entered into by the Debtors, on behalf of the beneficiaries, and the Liquidating Trustee on the Effective Date pursuant to the terms of the Plan.

**1.89**      **"Liquidating Trust Assets"** means the GUC Cash, the Causes of Action (other than Products Insurance Causes of Action), the Books and Records (other than Asbestos Books and Records), the Liquidating Trust Funding Amount, the residual interests, if any, in the Administrative Claims Reserve, Professional Fee Reserve and the

11

Convenience Claims Reserve, and the Liquidating Trust's contingent interests in any assets transferred by Liquidating Reichhold pursuant to Article V.E.3 of the Plan; provided, however, that the Liquidating Trust Assets shall not include the Administrative Claims Reserve, the Professional Fee Reserve or the Convenience Claims Reserve.

**1.90** **"Liquidating Trust Causes of Action"** means any and all Causes of Action except for Products Insurance Causes of Action.

**1.91** **"Liquidating Trust Committee"** means the committee created hereunder and appointed by Committee, subject to the Debtors' approval, that shall provide oversight and direction to the Liquidating Trustee in accordance with the terms of the Liquidating Trust Agreement.

**1.92** **"Liquidating Trust Funding Amount"** means an amount of Cash to be provided by the Debtors which amount is estimated to be $19 million.

**1.93** **"Liquidating Trust Interests"** means the uncertificated beneficial interests in the Liquidating Trust representing the right of each Holder of an Allowed General Unsecured Claim to receive Distributions from the Liquidating Trust in accordance with Article V.E.5 of this Plan and the Liquidating Trust Agreement.

**1.94** **"Liquidating Trust Termination Date"** has the meaning ascribed to such term in Article V.E.7 of the Plan.

**1.95** **"Liquidating Trustee"** means the person appointed by the Committee, subject to the Debtors' approval, in accordance to Article V.E.6 hereof to administer the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement.

**1.96** **"Local Rules"** means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

**1.97** **"New Common Stock"** has the meaning ascribed to such term in Article V.B.2 hereof.

**1.98** **"Non-Union Retiree Committee"** means the Official Committee of Non-Union Retired Employees appointed in these Chapter 11 Cases.

**1.99** **"Objection(s)"** means any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify or establish the priority, expunge, subordinate or estimate any Claim (including the resolution of any request for payment of any Administrative Claim).

**1.100** **"Official Bankruptcy Forms"** means the Official Bankruptcy Forms, prescribed by the Judicial Conference of the United States, the observance and use of which is required pursuant to Bankruptcy Rule 9009, as such forms may be amended, revised or supplemented from time to time.

52719/0001-11906966v12

**1.101** **"Old Common Shares"** means the class of shares of any of the Debtors designated as its common shares, that were issued and outstanding as of the Petition Date.

**1.102** **"Ordinary Course Professionals"** means those professionals authorized to be paid by the Debtors pursuant to the Order Pursuant to 11 U.S.C. §§ 105(a), 327, 330 and 331 Authorizing Debtors to Employ and Pay Professionals Utilized in the Ordinary Course of Business [Docket No. 156].

**1.103** **"Periodic Distribution Date"** means the date selected by the Liquidating Trustee, as approved by the Liquidating Trust Committee, for making a Distribution to Holders of Allowed General Unsecured Claims in accordance with the terms of the Liquidating Trust Agreement.

**1.104** **"Permissible Investments"** means (a) short-term direct obligations of, or obligations guaranteed by, the United States of America, (b) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof, (c) demand deposits or certificates of deposit at any bank or trust company, which has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000, or (d) such other investments as the Court may approve from time to time.

**1.105** **"Person"** has the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

**1.106** **"Petition Date"** means September 30, 2014, the date on which the Debtors filed their petitions for relief commencing the Chapter 11 Cases.

**1.107** **"Plan"** means this chapter 11 plan of liquidation proposed by the Plan Proponent, including all exhibits and schedules attached hereto or otherwise incorporated herein, as such Plan may be altered, amended, modified or supplemented from time to time, including in accordance with its terms and the Bankruptcy Code and the Bankruptcy Rules.

**1.108** **"Plan Proponent"** means the Debtors.

**1.109** **"Plan Supplement"** means the compilation(s) of documents and forms of documents, including any exhibits to the Plan not included herewith, that the Debtors shall file with the Court on or before the Plan Supplement Filing Date.

**1.110** **"Plan Supplement Filing Date"** means the date on which the Plan Supplement shall be filed with the Court, which date shall be December 30, 2015 for all Plan Supplement documents other than the Liquidating Trust Agreement which date shall be December 23, 2015, or such other date as may be approved by the Court without further notice to parties in interest.

**1.111** **"Priority Non-Tax Claim"** means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

13

**1.112** **"Priority Tax Claim"** means any Claim accorded priority in right of payment under section 507(a)(8) of the Bankruptcy Code.

**1.113** **"Products Insurance Carriers"** means an Insurer that issued a Products Insurance Policy, including but not limited to those Insurers participating in or otherwise identified in Exhibit A to the Products Insurance Cooperation Agreement.

**1.114** **"Products Insurance Causes of Action"** means any and all Causes of Action arising under the Products Insurance Policies or the Products Insurance Cooperation Agreement.

**1.115** **"Products Insurance Cooperation Agreement"** means the agreement with certain Products Insurance Carriers for the defense, resolution and payment of Asbestos Claims, if and when such agreement becomes effective, attached hereto as Exhibit D.

**1.116** **"Products Insurance Policy"** means any Insurance Policy issued or allegedly issued by any Products Insurance Carriers to or for the benefit of the Debtors, or to or for the benefit of any predecessor of the Debtors, that provide or allegedly provide coverage to the Debtors for Asbestos Claims or any other Claims alleging liability based on or arising out of products manufactured, made, sold, or distributed by Reichhold.

**1.117** **"Products Insurance Rights"** means any and all rights, titles, privileges, interests, claims, demands, or entitlements to any proceeds, payments, initial or supplemental dividends, scheme payments, supplemental scheme payments, causes of action, and choses in action related to any and all Products Insurance Policies, whether now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disposed or undisposed, fixed or contingent, including but not limited to: (a) any and all rights to pursue or receive payments with respect to Asbestos Claims under any and all Products Insurance Policies, whether for liability, defense, or otherwise; (b) any and all rights to pursue or receive payments related to any and all Products Insurance Policies that were entered into by any domestic or foreign insolvent insurance company, whether in receivership, liquidation, rehabilitation, run-off, scheme or arrangement, or any other form of proceeding; and (c) any and all rights to pursue or receive payments related to any and all Products Insurance Policies from any state insurance guaranty association in connection with any state insurance guaranty association statue.

**1.118** **"Professional"** means any professional employed by the Debtors or the Committee in the Chapter 11 Cases pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code and any professionals seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code, other than Ordinary Course Professionals.

**1.119** **"Professional Fee Holdback Amount"** means the amount equal to 20% of fees billed to the Debtors for a given month that were retained by the Debtors as a holdback on payment of Professional Fee Claims pursuant to the Professional Fee Order.

**1.120** **"Professional Fee Order"** means the Order Establishing Procedures for Interim Compensation and Reimbursement of Professionals [Docket No. 165].

**1.121** **"Professional Fee Bar Date"** means the deadline for Filing all applications for Professional Fee Claims, which shall be forty-five (45) days after the Effective Date, as set forth in Article IX.A.1 herein.

**1.122** **"Professional Fee Claim"** means a Claim of a Professional pursuant to sections 327, 328, 330, 331 or 503(b) for compensation or reimbursement of costs and expenses relating to services performed after the Petition Date and prior to and including the Effective Date.

**1.123** **"Professional Fee Estimate"** means (i) with respect to any Professional employed by the Debtors, the Committee or the Retiree Committee, a good-faith estimate of such Professional's anticipated accrued unpaid Professional Fee Claims as of the Effective Date to be provided by each Professional employed by the Debtors in writing to the Debtors prior to the commencement of the Confirmation Hearing, or in the absence of such a writing, to be prepared by the Debtors, and (ii) collectively, the sum of all individual Professional Fee Estimates.

**1.124** **"Professional Fee Reserve"** means the Cash to be reserved in an amount sufficient to fund (a) all Professional Fee Claims of Professionals employed by the Debtors, including but not limited to an amount sufficient to pay (i) all unpaid Professional Fee Holdback Amounts and other expenses billed by Professionals of the Debtors prior to the Effective Date; (ii) all outstanding fee applications of Professionals of the Debtors not ruled upon by the Court as of the Effective Date; and (iii) the estimated aggregate amount of all reasonable fees and expenses due to Professionals of the Debtors for periods that have not been billed as of the Effective Date; and (b) all accrued and unpaid fees and expenses of Committee Professionals as of the Effective Date.

**1.125** **"Proof of Claim"** means the proof of claim that must be filed before the applicable Bar Date, which term shall include a request for payment of an administrative expense claim.

**1.126** **"Pro Rata"** means, at any time, the proportion that the Face Amount of a Claim in a particular Class bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class, unless the Plan provides otherwise.

**1.127** **"Reichhold"** means Reichhold Liquidation, Inc. (f/k/a/ Reichhold, Inc.).

**1.128** **"Rejection Bar Date"** means the deadline by which a counterparty to a rejected Executory Contract or an Unexpired Lease of the Debtors must file a Proof of Claim for damages resulting from the rejection of such Executory Contract or Unexpired Lease by the Debtors, which deadline shall be the later of: (a) the General Bar Date; (b) thirty (30) days after the entry of an order by the Court authorizing such rejection; or (c) such other date, if any, as the Court may fix in the order authorizing such rejection.

15

**1.129** **"Remaining Assets"** means any and all assets of the Debtors' Estates as of the Effective Date, except any assets that would constitute Liquidating Trust Assets.

**1.130** **"Retiree Committee"** means the Official Committee of Non-Union Retiree Employees.

**1.131** **"RII"** means Reichhold Industries, Inc.

**1.132** **"Scheduled"** means, with respect to any Claim, the status and amount, if any, of that Claim as set forth in the Schedules.

**1.133** **"Schedules"** mean the schedules of assets and liabilities, schedules of executory contracts and statements of financial affairs Filed by each Debtor pursuant to section 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time in accordance with Bankruptcy Rule 1009 or any orders of the Court.

**1.134** **"Second Administrative Claims Bar Date Order"** means the Order (I) Establishing Second Bar Date for Filing Certain Chapter 11 Administrative Claims Against the Debtors, and (II) Approving Form and Manner of Notices Thereof [Docket No. 771].

**1.135** **Secured Claim"** means a Claim (a) that is secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or (b) that is subject to setoff under section 553 of the Bankruptcy Code and such right of setoff has been asserted by the holder of such right prior to the Confirmation Date in a properly filed motion for relief from the automatic stay, to the extent of the value of the Claimholder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

**1.136** **"Senior Secured Noteholder Claim"** means, individually, a Claim of a Holder of the Senior Secured Notes arising under or as a result of such notes and, collectively, the Claims of all such holders arising under or as a result of such notes.

**1.137** **"Senior Secured Noteholders"** means, collectively, the Holders of the Senior Secured Notes.

**1.138** **"Senior Secured Notes"** means the Senior Secured Notes due 2017 issued pursuant to the Senior Secured Notes Indenture.

**1.139** **"Senior Secured Notes Indenture"** means that certain indenture, dated as of May 8, 2012, by and among, non-debtor RII, as issuer, and Reichhold and Reichhold Holdings US, Inc., as guarantors, and Wells Fargo, as indenture trustee.

**1.140** **"Senior Secured Notes Trustee"** means Wells Fargo, in its capacity as collateral agent and indenture trustee for the Senior Secured Notes.

16

1.141    **"Senior Secured Notes Trustee Charging Lien"** means any Lien or other priority in payment to which the Senior Secured Notes Trustee is entitled, pursuant to the Senior Secured Notes Indenture, against Distributions to be made to Holders of the Senior Secured Noteholder Claims for payment of any Senior Secured Notes Trustee Fees.

1.142    **"Senior Secured Notes Trustee Fees"** means the reasonable compensation, fees, expenses, disbursements, and indemnity claims arising under the Senior Secured Notes Indenture, including attorneys' and agents' fees, expenses, and disbursements, incurred under the Senior Secured Notes Indenture by the Senior Secured Notes Trustee, whether prior to or after the Petition Date and whether prior to or after the Effective Date.

1.143    **"Subordinated 510(b) Claim"** means any Claim subordinated pursuant to section 510(b) of the Bankruptcy Code, which shall include any Claim arising from the rescission of a purchase or sale of any Old Common Shares, any Claim for damages arising from the purchase or sale of any Old Common Shares, or any Claim for reimbursement, contribution or indemnification on account of any such Claim.

1.144    **"Subordinated 510(c) Claim"** means any Claim (i) subordinated pursuant to section 510(c) of the Bankruptcy Code or (ii) for punitive or exemplary damages or for a fine or penalty, to the extent permitted by applicable law.

1.145    **"Substantive Consolidation Order"** means the order of the Court, which may be the Confirmation Order, authorizing substantive consolidation of the Estates pursuant to Article V.A hereof.

1.146    **"Tax"** or **"Taxes"** means all income, gross receipts, sales, use, transfer, payroll, employment, franchise, profits, property, excise or other similar taxes, estimated import duties, fees, stamp taxes and duties, value added taxes, levies, assessments or charges of any kind whatsoever (whether payable directly or by withholding), together with any interest and any penalties, additions to tax, or additional amounts imposed by any taxing authority with respect thereto.

1.147    **"Unclaimed Distributions"** means any undeliverable or unclaimed Distributions.

1.148    **"Unexpired Lease(s)"** means a lease to which any Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.149    **"Unimpaired"** means, when used in reference to a Claim or a Class, a Claim or a Class that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

1.150    **"U.S. Trustee"** means the United States Trustee for the District of Delaware.

1.151    **"U.S. Trustee Fees"** means fees payable pursuant to 28 U.S.C. § 1930.

17

**1.152** **"Voting Deadline"** means January 4, 2016, at 4:00 p.m. (Eastern time), the date and time by which all Ballots to accept or reject the Plan must be received in order to be counted, as set forth by the Solicitation Procedures Order.

**1.153** **"Wells Fargo"** means Wells Fargo Bank, National Association.

## C.     Rules of Interpretation

For purposes of the Plan, (a) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified or supplemented, (c) unless otherwise specified, all references in the Plan to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to the Plan, (d) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan in its entirety rather than to a particular portion of the Plan, (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan, and (f) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

## D.     Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## E.     Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) and except as otherwise provided herein or therein, the laws of (i) the State of Delaware shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan and (ii) the laws of the state of incorporation of each Debtor shall govern corporate governance matters with respect to such Debtor, in either case without giving effect to the principles of conflicts of law thereof.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

## A.     Introduction

All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described below, have not been classified.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent

that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim also is placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

**B.**     **Unclassified Claims (not entitled to vote on the Plan)**

    **1.**     **Administrative Claims**

    **2.**     **Priority Tax Claims (including Secured Claims described in 11 U.S.C. § 1129(a)(9)(D))**

**C.**     **Unimpaired Classes of Claims (deemed to have accepted the Plan and not entitled to vote on the Plan)**

    **1.**     **Class 1:  Secured Claims**

    Class 1 consists of all Secured Claims other than Secured Claims described in 11 U.S.C. § 1129(a)(9)(D) .  Each Holder of an Allowed Secured Claim shall be placed in a separate subclass, and each subclass shall be treated as a separate class for Distribution purposes.

    **2.**     **Class 2:  Priority Non-Tax Claims**

    Class 2 consists of all Priority Non-Tax Claims.

**D.**     **Impaired Classes of Claims (entitled to vote on the Plan)**

    **1.**     **Class 3:  General Unsecured Claims**

    Class 3 consists of all General Unsecured Claims.

    **2.**     **Class 4: Convenience Claims**

    Class 4 consists of all Convenience Claims.

**E.**     **Impaired Class of Claims (deemed to have rejected the Plan and not entitled to vote on the Plan)**

    **1.**     **Class 5:  Intercompany Claims**

    Class 5 consists of all Intercompany Claims.

**F.**     **Impaired Classes of Interests (deemed to have rejected the Plan and not entitled to vote on the Plan)**

    **1.**     **Class 6:  Interests**

    Class 6 consists of all Interests.

52719/0001-11906966v12

# ARTICLE III

# TREATMENT OF CLAIMS AND INTERESTS

**A.      Unclassified Claims**

**1.      Administrative Claims**

On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date or (ii) the date such Administrative Claim becomes an Allowed Administrative Claim, a Holder of an Allowed Administrative Claim (other than a Professional) shall receive, in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of the Face Amount of such Allowed Administrative Claim or (b) such other treatment as to which such Holder and the Debtors or the Liquidating Trustee, as applicable, shall have agreed upon in writing; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by a Debtor in the ordinary course of business during the Chapter 11 Cases may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto (x) on or prior to the Effective Date, by the Debtors, and (y) after the Effective Date, by the Disbursing Agent. Allowed Professional Fee Claims shall be paid from the Professional Fee Reserve pursuant to Article V.G.1 of the Plan.  For the avoidance of doubt, any payments made by the Liquidating Trust on account of Allowed Administrative Claims shall be paid solely from the Administrative Claims Reserve.

**2.      Priority Tax Claims**

On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date or (ii) the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, a Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, (a) Cash equal to the unpaid portion of the Face Amount of such Allowed Priority Tax Claim or (b) such other treatment as to which such Holder and the Debtors or the Liquidating Trustee, as applicable, shall have agreed upon in writing.  For the avoidance of doubt, any payments made by the Liquidating Trust on account of Allowed Priority Tax Claims shall be paid solely from the Administrative Claims Reserve.

**B.      Unimpaired Claims**

**1.      Class 1:  Secured Claims**

On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date or (ii) the date such Secured Claim becomes an Allowed Secured Claim, a Holder of an Allowed Secured Claim shall receive, in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Secured Claim, (a) Cash from the Debtors equal to the value of such Allowed Secured Claim, (b) a return of the Holder's Collateral securing the Secured Claim, (c) such treatment required under section 1124(2) of the Bankruptcy Code for such Claim to be rendered Unimpaired or (d) such other treatment as to which such Holder and the Debtors or the Liquidating Trustee, as applicable, shall have agreed upon in writing.

20

Any Holder of a Secured Claim shall retain its Lien in the Collateral or the proceeds of the Collateral (to the extent that such Collateral is sold by the Debtors or the Liquidating Trustee free and clear of such Lien) to the same extent and with the same priority as such Lien held as of Petition Date until such time as (A) the Holder of such Secured Claim (i) has been paid Cash equal to the value of its Allowed Secured Claim, (ii) has received a return of the Collateral securing the Secured Claim or (iii) has been afforded such other treatment as to which such Holder and the Debtors or the Liquidating Trustee, as applicable, shall have agreed upon in writing; or (B) such purported Lien has been determined by an order of the Court to be invalid or otherwise avoidable.

### 2.    Class 2: Priority Non-Tax Claims

On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date or (ii) the date such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, a Holder of an Allowed Priority Non-Tax Claim shall receive, in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Priority Non-Tax Claim, (a) Cash equal to the unpaid portion of the Face Amount of such Allowed Priority Non-Tax Claim or (b) such other treatment as to which such Holder and the Debtors or the Liquidating Trustee, as applicable, shall have agreed upon in writing.  For the avoidance of doubt, any payments made by the Liquidating Trust on account of Allowed Priority Non-Tax Claims shall be paid solely from the Administrative Claims Reserve.

### C.    Impaired Claims

### 1.    Class 3: General Unsecured Claims

On the Effective Date, each Holder of an Allowed General Unsecured Claim that is not an Insured Claim shall receive, in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed General Unsecured Claim, its Pro Rata share of the Liquidating Trust Interests.

As set forth in the Liquidating Trust Agreement, Distributions from the Liquidating Trust on account of Liquidating Trust Interests shall be made from the Liquidating Trust Assets after paying, reserving against or satisfying, among other things, the operating and administrative expenses of the Liquidating Trust, including but not limited to all costs, expenses and obligations incurred by the Liquidating Trustee (or professionals who may be employed by the Liquidating Trustee in administering the Liquidating Trust) in carrying out their responsibilities under the Liquidating Trust Agreement, or in any manner connected, incidental or related thereto.

Special Provisions regarding distributions to Holders of Allowed Insured Claims and Allowed Insured Asbestos Claims are set forth in Section III.G.

### 2.    Class 4: Convenience Claims

On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date or (ii) the date on which a Class 4 Convenience Claim becomes an Allowed Claim, each Holder of an Allowed Convenience Claim shall receive Cash in the amount of 5% of the amount of its

Allowed Convenience Class Claim. For the avoidance of doubt, any payments made by the Liquidating Trust on account of Allowed Convenience Claims shall be paid solely from the Convenience Claims Reserve.

### 3.    Class 5: Intercompany Claims

In connection with, and as a result of, the substantive consolidation of the Debtors' Estates and the Chapter 11 Cases, on the Effective Date, all Intercompany Claims shall be eliminated and the Holders of Intercompany Claims shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such Claims.

### D.    Interests

### 1.    Class 6: Interests

On the Effective Date, all Interests shall be cancelled and each Holder thereof shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan on account of such Interests.

### E.    Special Provision Regarding Unimpaired Claims

Except as otherwise provided in the Plan, the Confirmation Order, any other order of the Court or any document or agreement enforceable pursuant to the terms of the Plan, nothing shall affect the rights and defenses, both legal and equitable, of the Debtors and/or the Liquidating Trust with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

### F.    Allowed Claims

Notwithstanding any provision herein to the contrary, the Disbursing Agent shall only make Distributions to Holders of Allowed Claims. No Holder of a Disputed Claim shall receive any Distribution on account thereof until (and then only to the extent that) its Disputed Claim becomes an Allowed Claim. The Debtors and/or the Liquidating Trustee may, in their discretion, withhold Distributions otherwise due hereunder to any Claimholder until the Claims Objection Deadline, to enable a timely objection thereto to be filed. Any Holder of a Claim that becomes an Allowed Claim after the Effective Date shall receive its Distribution in accordance with the terms and provisions of the Plan and/or the Liquidating Trust Agreement, as applicable.

### G.    Special Provisions Regarding Insured Claims

### 1.    Limitation on Amounts to Be Distributed to Holders of Allowed Insured Claims (other than Insured Asbestos Claims)

Distributions under the Plan to each Holder of an Insured Claim will be limited to Distributions as the Holder of an Allowed General Unsecured Claim for the following amounts: (a) the applicable self-insured retention ("SIR") under the relevant Policy and (b) the amount by which a Claimholder's Claim exceeds the total coverage available from the relevant insurance policies of the Debtors for such Claim. Nothing in the Plan, the Plan Supplement, the

22

Confirmation Order, or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening or grants an injunction or release) alters or amends the terms and conditions of insurance policies issued to or providing coverage to any of the Debtors and/or any agreements related thereto including, but not limited to, (i) any obligation of an insurer (or third party administrator) to pay the holder of an Insured Claim amounts within a deductible (as opposed to an SIR) in whole dollars; (ii) any obligation of an insured to reimburse insurer for under-deductible amounts paid; and (iii) any right of an insurer and/or third party administrator to draw upon, hold and/or apply collateral and/or security to the insureds' obligations (including, but not limited to, deductible reimbursement obligations) thereunder regardless of whether such obligations arise before or after the Effective Date.. Nothing in Section III.G.l. of the Plan will constitute a waiver of any Cause of Action the Debtors may hold against any Person, including the Debtors' Insurers, or is intended to, will or will be deemed to preclude any Holder of an Allowed Insured Claim from recovering Insurance Proceeds from any Insurer of the Debtors subject to applicable non-bankruptcy law, in addition to any Distribution such Holder may receive under the Plan; provided, however, that nothing herein, shall create or permit a direct right of action by the Holder of an Insured Claim against an insurer; and provided further, however, that the Debtors do not waive, and expressly reserve their rights to assert that any insurance coverage is property of the Estates to which they are entitled.

## 2.    Resolution of Asbestos Claims by the Liquidating Trust

Asbestos Claims will be liquidated, determined, or otherwise resolved in the appropriate non-bankruptcy forum, except the Bankruptcy Court shall retain jurisdiction to resolve bankruptcy-related issues, including concurrent jurisdiction with the appropriate non-bankruptcy forums to determine if an Asbestos Claim is barred by the Bar Date Order.

Pursuant to the Products Insurance Cooperation Agreement, Disputed Asbestos Claims will be defended against and liquidated, determined, or otherwise resolved by the Liquidating Trust in cooperation with the Products Insurance Carriers participating in that agreement, at the cost of such carriers and pursuant to and in accordance with the terms of the Products Insurance Cooperation Agreement.

Distributions under the Plan to each Holder of an Asbestos Claim settled or resolved by final judgment shall be in accordance with the treatment provided under the Plan for General Unsecured Claims, but solely to the extent that such Asbestos Claim is not satisfied from proceeds payable to the holder thereof under any Products Insurance Policies and applicable law. To the extent an Asbestos Claim is an Insured Asbestos Claim, that Claim or the Insured portion of that Claim shall first be satisfied by the Products Insurance Carriers participating in the Products Insurance Cooperation Agreement, pursuant to and in accordance with the terms of the Products Insurance Cooperation Agreement. To the extent that a Holder has a resolved Asbestos Claim, the amount of which exceeds the total coverage available from the Products Insurance Policies, such Holder shall have an Allowed General Unsecured Claim in the amount by which such Asbestos Claim exceeds the coverage available under the Products Insurance Policies. Pursuant to the Liquidating Trust Agreement, the Liquidating Trustee will expressly allow a resolved Asbestos Claim in the amount by which such Claim exceeds the coverage available from the Products Insurance Policies, upon settlement or, if resolved by final judgment, after any period to appeal from a judgment has run without the appeal being taken.

23

3.      **Limitations on Effect of Bankruptcy**

Except as otherwise provided in this Section, nothing in the Disclosure Statement, this Plan, the Confirmation Order or any other order of this Court to the contrary (including, without limitation, any other provision that purports to be preemptory or supervening or grants a release): (i) shall affect, impair or prejudice the rights and defenses of the Insurers or the Debtors, or other insureds under the Insurance Policies in any manner; and such Insurers, Debtors, and other insureds shall retain all rights, obligations and defenses under the Insurance Policies, and the Insurance Policies shall apply to, and be enforceable by and against, the applicable Debtor(s) or insured(s) and the applicable Insurer(s) as if the Chapter 11 Cases had not occurred; (ii) shall in any way operate to, or have the effect of, impairing or having any res judicata, collateral estoppel or other preclusive effect on any party's legal, equitable or contractual rights or obligations under any Insurance Policy, if any, in any respect; or (iii) shall otherwise determine the applicability or non-applicability of any provision of any Insurance Policy and any such rights and obligations shall be determined under the Insurance Policies and applicable non-bankruptcy law.

## ARTICLE IV

### ACCEPTANCE OR REJECTION OF THE PLAN

A.      **Acceptance by an Impaired Class**

In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

B.      **Presumed Acceptances by Unimpaired Classes**

Classes 1 and 2 are Unimpaired by the Plan. Under section 1126(f) of the Bankruptcy Code, such Claimholders are conclusively presumed to accept the Plan, and the votes of such Claimholders shall not be solicited.

C.      **Classes Deemed to Reject Plan**

Holders of Claims in Class 5 and Interest Holders in Class 6 are not entitled to receive or retain any property under the Plan. Under section 1126(g) of the Bankruptcy Code, such Claim and Interest Holders are deemed to reject the Plan, and the votes of such Claimholders and Interest Holders shall not be solicited.

D.      **Impaired Classes of Claims Entitled to Vote**

Because Claims in Classes 3 and 4 are Impaired under the Plan and Holders of such Claims shall receive or retain property under the Plan, Holders of Claims in Classes 3 and 4 are entitled to vote and shall be solicited with respect to the Plan.

**E.    Elimination of Vacant Classes**

Any Class or sub-Class of Claims or Interests that is not occupied as of the date of the commencement of the Confirmation Hearing by at least one Allowed Claim or Allowed Interest, as applicable, or at least one Claim or Interest, as applicable, temporarily Allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for all purposes, including for purposes of (i) voting on the acceptance or rejection of the Plan and (ii) determining acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

**F.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**

Because Classes 5 and 6 are deemed to reject the Plan, the Debtors shall (i) seek confirmation of the Plan from the Court by employing the "cramdown" procedures set forth in section 1129(b) of the Bankruptcy Code and/or (ii) modify the Plan in accordance with Article XII.A hereof. The Debtors reserve the right to alter, amend, modify, revoke or withdraw the Plan or any Plan Exhibit or schedule, including to amend or modify the Plan or such exhibits or schedules to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.    Substantive Consolidation**

**1.    Consolidation of the Chapter 11 Estates**

The Plan contemplates and is predicated upon entry of an order substantively consolidating the Debtors' Estates and Chapter 11 Cases for all purposes, including voting, Distribution and Confirmation. On the Effective Date, (i) all Intercompany Claims between the Debtors shall be eliminated, (ii) all assets and liabilities of the Affiliate Debtor shall be merged or treated as if they were merged with the assets and liabilities of Reichhold, (iii) any obligation of a Debtor and any guarantee thereof by the other Debtor shall be deemed to be one obligation of Reichhold, and any such guarantee shall be eliminated, (iv) the issued and outstanding shares of stock of the Affiliate Debtor shall be cancelled, (v) each Claim Filed or to be Filed against any Debtor shall be deemed Filed only against Reichhold and shall be deemed a single Claim against and a single obligation of Reichhold, and (vi) any joint or several liability of the Debtors shall be deemed one obligation of Reichhold. On the Effective Date, and in accordance with the terms of the Plan and the consolidation of the assets and liabilities of the Debtors, all Claims based upon guarantees of collection, payment or performance made by one Debtor as to the obligations of another Debtor shall be released and of no further force and effect.

The substantive consolidation effected pursuant to this Article V.A.1 of the Plan (x) shall not affect the rights of any Holder of a Secured Claim with respect to the Collateral securing such Claims and (y) shall not, and shall not be deemed to, prejudice the Causes of Action and the Avoidance Actions (subject to the releases set forth in Article X.D of the Plan), which shall survive entry of the Substantive Consolidation Order, as if there had been no substantive consolidation.

25

In the event the Bankruptcy Court authorizes the Debtors to substantively consolidate less than all of the Debtors' Estates: (a) the Plan shall be treated as a separate plan of liquidating for each Debtor not substantively consolidated and (b) the Debtors shall not be required to resolicit votes with respect to the Plan.

### 2.    Substantive Consolidation Order

The Plan shall serve as, and shall be deemed to be, a motion for entry of an order substantively consolidating the Debtors' Chapter 11 Cases.  If no objection to substantive consolidation is timely Filed and served by any Holder of an Impaired Claim affected by the Plan as provided herein on or before the deadline to object to Confirmation of the Plan, or such other date as may be fixed by the Court, the Substantive Consolidation Order (which may be the Confirmation Order) may be approved by the Court.  If any such objections are timely Filed and served, a hearing with respect to the substantive consolidation of the Chapter 11 Cases and the objections thereto shall be scheduled by the Court, which hearing may, but is not required to, coincide with the Confirmation Hearing.

## B.    Corporate Action

### 1.    Deemed Mergers of Debtors

On the Effective Date, (a) Canadyne-Georgia Corporation shall be deemed merged with and into Canadyne Corporation, which shall then be deemed merged with and into Reichhold without the necessity of action being taken by or on behalf of the Debtors; provided, however, that the Debtors shall be required to file all documents necessary to effectuate such mergers; (b) Reichhold Holdings US, Inc. shall be deemed merged with and into Reichhold without the necessity of any action being taken by or on behalf of the Debtors; provided, however, that the Debtors shall be required to file all documents necessary to effectuate such merger; (c) the members of the boards of directors of the Debtors shall be deemed to have resigned; (d) the Chapter 11 Cases of the Affiliate Debtors shall be closed upon the Effective Date without the need for further Court order, following which any and all proceedings that could have been brought or otherwise commenced in the Chapter 11 Case of an Affiliate Debtor shall be brought or otherwise commenced in Reichhold's Chapter 11 Case.

Upon the resignation of the board of directors of Reichhold, the Liquidating Trust shall serve as the sole shareholder of Liquidating Reichhold, and the Liquidating Trustee shall serve as the sole officer and sole director of Liquidating Reichhold.  The Liquidating Trust Committee, as set forth more fully herein, shall be responsible for, among other things, instructing and supervising the Liquidating Trustee with respect to its responsibilities under this Plan and the Liquidating Trust Agreement.

### 2.    Continued Corporate Existence

Reichhold shall continue to exist as Liquidating Reichhold after the Effective Date in accordance with the laws of the State of Delaware and pursuant to the certificate of incorporation and by-laws in effect prior to the Effective Date, as amended by the Amended and Restated Certificate of Incorporation of Reichhold Liquidating, Inc. and the Amended and Restated By-laws of Reichhold Liquidating, Inc., attached to the Plan as Exhibits B and C, respectively.  The

26

certificate of incorporation and by-laws of Reichhold shall be amended as necessary, as permitted by section 303 of Title 8 of the Annotated Code of Delaware (as amended, the "Delaware General Corporation Law"), to satisfy the provisions of the Plan and the Bankruptcy Code and shall include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity Securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code. On the Effective Date, Liquidating Reichhold shall issue one share of common stock (the "New Common Stock") to the Liquidating Trust. The Liquidating Trust shall not sell, transfer or otherwise dispose of the New Common Stock absent the prior written consent of the Liquidating Trust Committee and approval by the Court. The Liquidating Trust shall sell, transfer or otherwise dispose of the New Common Stock and shall vote the New Common Stock on any matter requiring a vote of shareholders of Liquidating Reichhold under the Delaware Corporation Law, in accordance with the written directions of the Liquidating Trust Committee or order of the Court. The Liquidating Trustee, acting pursuant to the terms and conditions of the Liquidating Trust Agreement, shall be authorized to execute, deliver, file or record such documents, instruments, releases and other agreements and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

The Professionals employed by the Debtors and the Committee, as applicable, shall be entitled to reasonable compensation and reimbursement of actual, necessary expenses for post-Effective Date activities, including the preparation, filing and prosecution of final fee applications, upon the submission of invoices to the Liquidating Trustee for payment from the Professional Fee Reserve. Any time or expenses incurred in the preparation, filing and prosecution of final fee applications shall be disclosed by each Professional in its final fee application and shall be subject to approval of the Court.

### 3. Cancellation of Existing Securities and Agreements

Except as otherwise provided in the Plan, and in any contract, instrument or other agreement or document created in connection with the Plan, on the Effective Date, any promissory notes, share certificates, whether for preferred or common stock (including treasury stock), other instruments evidencing any Claims or Interests, other than a Claim that is being Reinstated and rendered unimpaired, and all options, warrants, calls, rights, puts, awards, commitments or any other agreements of any character to acquire such Interests shall be deemed canceled and of no further force and effect, without any further act or action under any applicable agreement, law, regulation, order or rule, and the obligations under the notes, share certificates and other agreements and instruments governing such Claims and Interests shall be discharged; provided, however, that certain instruments, documents and credit agreements related to Claims shall continue in effect solely for the purposes of allowing the agents to make Distributions to the beneficial holders and lenders thereunder; and provided, further, however, that the cancellation of the Senior Secured Notes Indenture hereunder shall not in any way affect or diminish either (x) the rights and duties of the Senior Secured Notes Trustee to make Distributions pursuant to the Plan to the Holders of the Senior Secured Noteholder Claims in accordance with the Senior Secured Notes Indenture, or (y) the right of the Senior Secured Notes Trustee to assert the Senior Secured Notes Trustee Charging Lien with respect to such Distributions. Notwithstanding the foregoing, the Senior Secured Notes and the Senior Secured Notes Indenture will remain in effect for a period of one year following the Exchange Effective

27

Date for the purpose of permitting any Senior Secured Noteholders that have not participated in the Exchange to exercise their right to participate in the Exchange through the one year anniversary of the Exchange Effective Date, and at 12:01 a.m. prevailing Eastern Time on the day following the one year anniversary of the Exchange Effective Date the Senior Secured Notes and the Senior Secured Notes Indenture shall be deemed canceled and of no further force and effect, without any further act or action under any applicable agreement, law, regulation, order or rule, except as set forth in the preceding sentence. The Holders of or parties to any such canceled notes, share certificates and other agreements and instruments shall have no rights against the Debtors, or any of them, arising from or relating to such notes, share certificates and other agreements and instruments or the cancellation thereof, except the rights provided pursuant to the Plan.

4.    **No Further Action**

Each of the matters provided for under the Plan involving the corporate structure of the Debtors or corporate action to be taken by or required of the Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by any Person, including but not limited to, the Liquidating Trustee, Holders of Claims or Interests against or in the Debtors, or directors or officers of the Debtors, as permitted by section 303 of the Delaware General Corporation Law.

5.    **Effectuating Documents; Further Transactions**

Any appropriate officer of Reichhold or the Affiliate Debtor, as the case may be, shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The secretary of Reichhold or the Affiliate Debtor, as the case may be, shall be authorized to certify or attest to any of the foregoing actions.

**C.    Retiree Committee**

The Retiree Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code and shall perform such other duties as it may have been assigned by the Court prior to the Effective Date. On the Effective Date, the Retiree Committee shall be dissolved and its members shall be deemed released of all their duties, responsibilities and obligations in connection with the Chapter 11 Cases or the Plan and its implementation, and the retention or employment of the Committee's attorneys, financial advisors and other agents shall terminate, except with respect to (i) all Professional Fee Claims and (ii) any appeals of the Confirmation Order. All expenses of Retiree Committee members and the reasonable fees and expenses of their Professionals through the Effective Date shall be paid in accordance with the terms and conditions of the Professional Fee Order.

### D.    Creditors' Committee and Liquidating Trust Committee

#### 1.    Dissolution of the Committee

The Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code and shall perform such other duties as it may have been assigned by the Court prior to the Effective Date. On the Effective Date, the Committee shall be dissolved and its members shall be deemed released of all their duties, responsibilities and obligations in connection with the Chapter 11 Cases or the Plan and its implementation, and the retention or employment of the Committee's attorneys, financial advisors and other agents shall terminate, except with respect to (i) all Professional Fee Claims and (ii) any appeals of the Confirmation Order.  All expenses of Committee members and the reasonable fees and expenses of their Professionals through the Effective Date shall be paid in accordance with the terms and conditions of the Professional Fee Order.

#### 2.    Creation of Liquidating Trust Committee and Procedures Related Thereto

On or prior to the Plan Supplement Filing Date, the Committee, subject to the Debtors' approval, shall appoint the Liquidating Trust Committee members. Each member of the Liquidating Trust Committee shall be entitled to vote on all matters in accordance with the Liquidating Trust Agreement.  Members of the Liquidating Trust Committee shall serve without compensation, but shall be entitled to reimbursement of reasonable expenses.

#### 3.    Standing of the Liquidating Trust Committee

The Liquidating Trust Committee shall have independent standing to appear and be heard in the Court as to any matter relating to the Plan, the Liquidating Trust Agreement, the Estates or Liquidating Reichhold, including any matter as to which the Court has retained jurisdiction pursuant to Article XI of the Plan.

#### 4.    Function and Duration of the Liquidating Trust Committee

The Liquidating Trust Committee shall have the rights and responsibilities set forth in the Plan and the Liquidating Trust Agreement, including (a) instructing and supervising the Liquidating Trustee with respect to its responsibilities under this Plan and the Liquidating Trust Agreement.  The Liquidating Trust Committee shall remain in existence until such time as the final Distributions under the Liquidating Trust Agreement have been made and Liquidating Reichhold has been dissolved in accordance with the terms of this Plan.

#### 5.    Indemnification of Liquidating Trustee and Liquidating Trust Committee

The Indemnified Persons shall be held harmless and shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the Liquidating Trust, Liquidating Trust Committee or Liquidating Trustee (as applicable), except those acts that are determined by Final Order of the Court to have arisen out of their own intentional fraud, willful misconduct or gross

29

negligence. Each Indemnified Person shall be entitled to be indemnified, held harmless and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such Persons and Entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such Persons or Entities in respect of that Person's or Entity's actions or inactions regarding the implementation or administration of this Plan, or the discharge of their duties under the Plan or Liquidating Trust Agreement, except for any actions or inactions that are determined by Final Order of the Court to have arisen from intentional fraud, willful misconduct or gross negligence. Any Claim of the Indemnified Persons to be indemnified, held harmless or reimbursed shall be satisfied solely from the Liquidating Trust Assets or any applicable insurance coverage.

6.      **Recusal of Liquidating Trust Committee Members**

A Liquidating Trust Committee member shall recuse itself from any decisions or deliberations regarding actions taken or proposed to be taken by the Liquidating Trustee with respect to the Claims, Causes of Action or rights of such Liquidating Trust Committee member, the entity appointing such Liquidating Trust Committee member, or any affiliate of the foregoing.

E.      **The Liquidating Trust**

1.      **Establishment and Administration of the Liquidating Trust**

(a)      On the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of, among other things, (i) investigating and, if appropriate, pursuing Liquidating Trust Causes of Action, (ii) administering and pursuing the Liquidating Trust Assets, (iii) resolving Disputed Claims and any Claim objections pending as of the Effective Date and (iv) making Distributions from the Liquidating Trust to Holders of Allowed Claims as provided for in the Plan and/or the Liquidating Trust Agreement.

(b)      Upon execution of the Liquidating Trust Agreement, the Liquidating Trustee shall be authorized to take all steps necessary to complete the formation of the Liquidating Trust. The Liquidating Trust shall be administered by the Liquidating Trustee in accordance with the Liquidating Trust Agreement. From and after the Effective Date, the Liquidating Trustee shall be vested with the powers of the sole shareholder, officer and director of Liquidating Reichhold.

(c)      It is intended that the Liquidating Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and as a "grantor trust" within the meaning of Sections 671 through 679 of the Internal Revenue Code. In furtherance of this objective, the Liquidating Trustee shall, in its business judgment, make continuing best efforts to dispose of the trust assets, make timely distributions, and not unduly prolong the duration of the Liquidating Trust. All Liquidating Trust Assets held by the Liquidating Trust on the Effective Date shall be deemed for all federal income tax purposes to have been distributed by the Debtors on a Pro Rata basis to Holders of Allowed General Unsecured Claims and then contributed by such Holders to the Liquidating Trust in exchange for the Liquidating Trust Interests, and all parties (including the Liquidating

Trustee and the Holders of beneficial interests in the Liquidating Trust) will be required to treat the transfer of assets to the Liquidating Trust accordingly. All Holders of General Unsecured Claims have agreed to use consistently the valuation of the Liquidating Trust Assets transferred to the Liquidating Trust as established by the Liquidating Trustee for all federal income tax purposes and all applicable reporting requirements. The beneficiaries under the Liquidating Trust shall be treated as the grantors and deemed owners of the Liquidating Trust. All earnings of the Liquidating Trust, including those retained in a Disputed Claims Reserve, shall be treated as taxable income on a current basis for federal income tax purposes. The Liquidating Trustee shall be responsible for filing information, including tax returns, on behalf of the Liquidating Trust as grantor trust pursuant to Treasury Regulation Section 1.671-4(a).

2.    **Assets of the Liquidating Trust**

On the Effective Date, or as soon as reasonably practicable thereafter, the Debtors shall transfer and assign to the Liquidating Trust all of their right, title and interest in and to all of the Liquidating Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, all such assets shall automatically vest in the Liquidating Trust free and clear of all Claims and liens, subject only to the Allowed Claims of the Holders of Liquidating Trust Interests as set forth in the Plan and the expenses of the Liquidating Trust as set forth herein and in the Liquidating Trust Agreement. Thereupon, the Debtors shall not have any interest in or with respect to the Liquidating Trust Assets.

Also on the Effective Date, or as soon as reasonably practicable thereafter, Hahn and Hessen shall transfer and assign to the Liquidating Trust all of the right, title and interest in and to all of the GUC Cash, which Cash, upon transfer, shall be subject only to the Allowed Claims of the Holders of Liquidating Trust Interests as set forth in the Plan and the expenses of the Liquidating Trust as set forth herein and in the Liquidating Trust Agreement.

3.    **Other Funds to be Transferred to the Liquidating Trust**

(a) On or before the Effective Date, the Debtors shall transfer (i) Cash in the Amount of the Administrative and Priority Claims Estimate to the Liquidating Trust, which Cash shall be used by the Liquidating Trustee to fund the Administrative Claims Reserve; (ii) Cash in the Amount of the Convenience Claims Estimate to the Liquidating Trust, which Cash shall be used by the Liquidating Trustee to fund the Convenience Class Reserve; and (iii) Cash in the amount of the Professional Fee Estimate to fund the Professional Fee Reserve.

(b) After the Effective Date, Liquidating Reichhold shall be authorized to transfer Cash generated from the liquidation of its Remaining Assets to the Liquidating Trust without further Court approval.

4.    **Rights and Powers of the Liquidating Trust and the Liquidating Trustee**

(a)    The Liquidating Trustee shall be deemed the Estates' representative in accordance with section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Liquidating Trust Agreement, including, without limitation, the powers of a

31

trustee under sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules, including without limitation, the right to (i) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan, the Liquidating Trust Agreement and the Products Insurance Cooperation Agreement; (ii) prosecute, settle, abandon or compromise any Liquidating Trust Causes of Action; (iii) make Distributions contemplated by the Plan and the Liquidating Trust Agreement; (iv) establish and administer any necessary reserves that may be required, including the Disputed Claims Reserve and the Administrative Claims Reserve; (v) object to Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Court such objections; (vi) employ and compensate professionals (including professionals previously retained by the Debtors and/or the Committee), provided, however, that any such compensation shall be made only out of the Liquidating Trust Assets; and (vii) file all federal, state and local tax returns if necessary; (viii) cooperate with Products Insurance Carriers participating in the Products Insurance Cooperation Agreement in defense and resolution of Asbestos Claims pursuant to and in accordance with the terms of the Products Insurance Cooperation Agreement; and (ix) seek recovery from Products Insurance Carriers for Asbestos Claims.

(b)    The Liquidating Trust shall, as of the Effective Date,  assume the Debtors' responsibility under the Plan to pay Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Secured Claims, Allowed Convenience Claims and Allowed Professional Fee Claims, and in accordance therefore, shall be authorized to increase the amount of Cash held in the Administrative Claims Reserve, the Professional Fee Reserve, the Convenience Claims Reserve, and any other reserve set up to pay the Allowed Secured Claims, as needed.

(c)    The Liquidating Trustee has full authority to take any steps necessary to administer the Liquidating Trust Agreement, including without limitation, the duty and obligation to liquidate Liquidating Trust Assets, to make Distributions therefrom in accordance with the provisions of this Plan and to pursue, settle or abandon any Liquidating Trust Causes of Action, all in accordance with the Liquidating Trust Agreement.

5.    **Liquidating Trust Interests**

(a)    On the Effective Date, each Holder of an Allowed General Unsecured Claim shall, by operation of the Plan, receive its Pro Rata share of the Liquidating Trust Interests.  Liquidating Trust Interests shall be reserved for Holders of Disputed General Unsecured Claims and issued by the Liquidating Trust to, and held by the Liquidating Trustee in, the Disputed Claims Reserve pending allowance or disallowance of such Claims.  No other entity shall have any interest, legal, beneficial or otherwise, in the Liquidating Trust Assets upon the assignment and transfer of such assets to the Liquidating Trust. The Senior Secured Notes Trustee shall be listed as the sole creditor on the records of the Liquidating Trust with respect to Liquidating Trust Interests distributed on account of Senior Secured Noteholder Claims, and all Distributions to holders of such Liquidating Trust Interests shall be made to the Senior Secured Notes Trustee.

As set forth in the Liquidating Trust Agreement, Distributions from the Liquidating Trust on account of Liquidating Trust Interests shall be made from the Liquidating Trust Assets after

32

paying, reserving against or satisfying, among other things, the operating and administrative expenses of the Liquidating Trust, including but not limited to all costs, expenses and obligations incurred by the Liquidating Trustee (or professionals who may be employed by the Liquidating Trustee in administering the Liquidating Trust) in carrying out their responsibilities under the Liquidating Trust Agreement, or in any manner connected, incidental or related thereto.

(b)     The Liquidating Trust Interests shall be uncertificated and shall be nontransferable except upon death of the Holder or by operation of law. Holders of Liquidating Trust Interests, in such capacity, shall have no voting rights with respect to such interests. The Liquidating Trust shall have a term of five (5) years from the Effective Date, without prejudice to the rights of the Liquidating Trust Committee to extend such term conditioned upon the Liquidating Trust not becoming subject to the Securities Exchange Act of 1934 (as now in effect or hereafter amended).

6.     **Appointment of a Liquidating Trustee**

(a)     The Liquidating Trustee shall be designated by the Committee, subject to the Debtors' approval. The Debtors shall file a notice on a date that is not less than ten (10) days prior to the hearing to consider confirmation of the Plan designating the Person selected as Liquidating Trustee. The appointment of the Liquidating Trustee shall be approved in the Confirmation Order, and such appointment shall be as of the Effective Date. The Liquidating Trustee shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Plan and Liquidating Trust Agreement.

(b)     The Liquidating Trustee shall not be obligated to obtain a bond but may do so, in the Liquidating Trust Committee's discretion, in which case the expense incurred by such bonding shall be paid by the Liquidating Trust.

(c)     The Liquidating Trustee, the members of the Liquidating Trust Committee and their professionals shall be exculpated and indemnified pursuant to and in accordance with the terms of the Plan and Liquidating Trust Agreement.

7.     **Distributions to Holders of General Unsecured Claims**

(a)     Initial Distributions. On the Initial Distribution Date, the Liquidating Trustee, subject to Article VI.B below, shall make, or shall make adequate reserves in the Disputed Claims Reserve for, the Distributions required to be made under the Plan to Holders of Allowed General Unsecured Claims. The Trustee shall not make any Distributions of Liquidating Trust Assets to the beneficiaries under the Liquidating Trust unless the Trustee retains and reserves in the Disputed Claims Reserve such amounts as are required under Article VI.I.3 of the Plan.

(b)     Interim Distributions. The Liquidating Trustee, subject to Article VI.B below, shall make interim Distributions of Cash in accordance with this Plan and Article IV of the Liquidating Trust Agreement (i) to Holders of Liquidating Trust Interests as soon as reasonably practicable and (ii) from the Disputed Claims Reserve as soon as reasonably practical after Disputed General Unsecured Claims become Allowed Claims.

33

(c)     Final Distributions. The Liquidating Trust shall be dissolved and its affairs wound up and the Liquidating Trustee, subject to Article VI.B below, shall make the final Distributions, upon the earlier of (i) the date which is five (5) years after the Effective Date, and (ii) that date when, (A) in the reasonable judgment of the Liquidating Trustee, substantially all of the assets of the Liquidating Trust have been liquidated and there are no substantial potential sources of additional Cash for Distribution; and (B) there remain no substantial Disputed Claims. Notwithstanding the foregoing, on or prior to a date not less than six (6) months prior to such termination, the Court, upon motion by a party in interest, may extend the term of the Liquidating Trust for one or more finite terms based upon the particular facts and circumstances present at that time, if an extension is necessary to the liquidating purpose of the Liquidating Trust. The date on which the Liquidating Trustee determines that all obligations under the Plan and Liquidating Trust Agreement have been satisfied is referred to as the "Liquidating Trust Termination Date." On the Liquidating Trust Termination Date, the Liquidating Trustee shall, to the extent not already done:

> (i)     file the necessary documents to effectuate the dissolution of Liquidating Reichhold in accordance with the laws of the State of Delaware;

> (ii)     resign as the sole officer and sole director of Liquidating Reichhold; and

> (iii)     request that the Court enter an order closing the Bankruptcy Cases.

Upon the Liquidating Trust Termination Date, Liquidating Reichhold shall be deemed dissolved for all purposes (if not previously dissolved) without the necessity for any other or further actions to be taken by or on behalf of Liquidating Reichhold or payments to be made in connection therewith.

Upon dissolution of the Liquidating Trust, if the Liquidating Trustee reasonably determines that any remaining Liquidating Trust Assets are insufficient to render a further distribution practicable, or exceed the amounts required to be paid under the Plan, the Liquidating Trustee shall transfer such remaining funds to a charitable institution selected by the Liquidating Trustee, which charitable institution shall be qualified as a not-for-profit corporation under applicable federal and state laws.

## 8.     Distributions to Holders of Administrative and Priority Claims

On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date or (ii) the date an Administrative Claim, Priority Tax Claim or Priority Non-Tax Claim becomes an Allowed Claim, the Liquidating Trustee shall make the Distributions required to be made under the Plan to Holders of Allowed Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims and Convenience Claims, subject to the limitations set forth in the Liquidating Trust Agreement.

### 9. Reporting Requirement of Liquidating Trust

The Liquidating Trust's formation documents shall require that financial statements or similar reports of the Liquidating Trust be sent to all Holders of Liquidating Trust Interests on an annual basis.

## F. Limited Revesting of Remaining Assets

Notwithstanding anything herein to the contrary, any Remaining Assets shall be vested in the Debtors on or following the Effective Date.

## G. Limited Release of Liens

On the Effective Date, all mortgages, deeds of trust, liens or other security interests against property of the Estates, shall be released; provided, however, on the Effective Date, and to the extent not released prior to the Effective Date pursuant to Court order or otherwise, all mortgages, deeds of trust, liens or other security interests against the Liquidating Trust Assets shall be released.

## H. Accounts and Reserves

### 1. Professional Fee Reserve

On or before the Effective Date, the Debtors shall transfer Cash in the Amount of the Professional Fee Estimate to the Liquidating Trust, which Cash shall be used by the Liquidating Trustee to fund the Professional Fee Reserve. The Cash so transferred shall not be used for any purpose other than to pay Allowed Professional Fee Claims and shall be placed in a segregated escrow account. The Liquidating Trustee, subject to the terms and conditions of the Plan and the Liquidating Trust Agreement, shall pay each Professional Fee Claim of a Professional employed by the Debtors or the Committee, on or as soon as reasonably practicable after the date such Claim becomes an Allowed Claim, upon entry of a Final Order allowing such Claim. After all Professional Fee Claims are Allowed or Disallowed and the Allowed amounts of such Claims are paid by the Liquidating Trustee, any remaining Cash in the Professional Fee Reserve shall be distributed by the Liquidating Trustee to the Liquidating Trust, provided that all Allowed Administrative Claims, Convenience Claims, Priority Tax Claims and Priority Non-Tax Claims are paid. Only Professionals employed in the Chapter 11 Cases by the Debtors, the Committee or the Retiree Committee shall be entitled to payment from the Professional Fee Reserve.

### 2. Administrative Claims Reserve

On or before the Effective Date, the Debtors shall transfer Cash in the Amount of the Administrative and Priority Claims Estimate to the Liquidating Trust, which Cash shall be used by the Liquidating Trustee to fund the Administrative Claims Reserve. The Cash so transferred shall not be used for any purpose other than to pay Allowed Administrative Claims (except Professional Fee Claims, which shall be paid from the Professional Fee Reserve), Priority Tax Claims and Priority Non-Tax Claims. The Liquidating Trustee (i) shall segregate in an escrow account and shall not commingle the Cash held in the Administrative Claims Reserve and (ii) subject to the terms and conditions of the Plan and the Liquidating Trust Agreement, shall

35

pay each Administrative Claim (except Professional Fee Claims, which shall be paid from the Professional Fee Reserve), Priority Tax Claim and Priority Non-Tax Claim, on or as soon as reasonably practicable after the date such Claim becomes an Allowed Claim.  After all Administrative Claims (except Professional Fee Claims), Priority Tax Claims and Priority Non-Tax Claims are Allowed or Disallowed and the Allowed amounts of such Claims are paid by the Liquidating Trust, any remaining Cash in the Administrative Claims Reserve shall be distributed by the Liquidating Trustee to the Liquidating Trust provided that all Allowed Professional Fee Claims have been paid.

### 3.    Other Reserves

The Liquidating Trust shall establish and administer any other necessary reserves that may be required under the Plan or Liquidating Trust Agreement, including the Disputed Claims Reserve and the Convenience Class Reserve.

## I.    Exemption from Certain Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents without the payment of any such tax or governmental assessment.

## J.    Applicability of Sections 1145 and 1125(e) of the Bankruptcy Code

### 1.    Issuance of New Common Stock

Pursuant to the provisions of section 1145 of the Bankruptcy Code with respect to the New Common Stock, the distribution of New Common Stock under the terms of this Plan shall constitute the offer or sale under a plan of the Debtors of a security of a successor to the Debtors under such plan in exchange for a claim against, an interest in, or a claim for an administrative expense in the Chapter 11 Cases, such that pursuant to section 1145(a)(1) of the Bankruptcy Code, the issuance of the New Common Stock, to the extent the New Common Stock constitutes "securities" under applicable law, shall be exempt from requirements of section 5 of the Securities Act of 1933, as amended, and any other federal, state or local laws requiring registration for offer or sale of securities.

Solely for the limited purpose of the provisions of section 1125(e) of the Bankruptcy Code, Liquidating Reichhold shall be deemed to have participated, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale or purchase of a security, offered or sold under the Plan, of a newly organized successor to the Debtors under the Plan, and therefore, pursuant to section 1125(e) of the Bankruptcy Code, is not liable for violation of any applicable law, rule or regulation governing the offer, issuance, sale or purchase of securities.

36

2.      **Issuance of Liquidating Trust Interests**

Under section 1145 of the Bankruptcy Code, the issuance of the Liquidating Trust Interests under the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities.  If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trustee shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

**K.      Preservation of Causes of Action**

1.      **Liquidating Trust Causes of Action**

In accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Trust shall retain and may enforce all rights to commence and pursue, as appropriate, the Liquidating Trust Causes of Action, and the Liquidating Trust's rights to commence, prosecute or settle such Liquidating Trust Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Liquidating Trust may pursue such Liquidating Trust Causes of Action, as appropriate, in accordance with the best interests of the Liquidating Trust beneficiaries.  No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Liquidating Trust Claims against them as any indication that Liquidating Reichhold or the Liquidating Trust, as applicable, shall not pursue any and all available Liquidating Trust Causes of Action against them.  The Debtors or the Liquidating Trust, as applicable, expressly reserve all rights to prosecute any and all Liquidating Trust Causes of Action against any Entity, except as otherwise expressly provided in the Plan.  Unless any Liquidating Trust Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Court order, the Liquidating Trust expressly reserves all Liquidating Trust Claims for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppels (judicial, equitable or otherwise) or laches, shall apply to such Liquidating Trust Causes of Action upon, after or as a consequence of the Confirmation or Consummation.

The substantive consolidation of the Debtors and their Estates pursuant to the Confirmation Order and Article V.A of this Plan shall not, and shall not be deemed to, prejudice any of the Liquidating Trust Causes of Action, which shall survive entry of the Confirmation Order for the benefit of the Debtors and their Estates, and, upon the Effective Date, for the benefit of the Liquidating Trust.

A nonexclusive schedule of Causes of Action is attached hereto as Exhibit E.   In accordance with and subject to any applicable law, the Debtors' inclusion or failure to include any Causes of Action on Exhibit E shall not be deemed an admission, denial or waiver of any Cause of Action that any Debtor or any Estate may hold against any Entity.

2.    **Products Insurance Causes of Action**

In accordance with section 1123(b) of the Bankruptcy Code, Liquidating Reichhold shall retain and may enforce all rights to commence and pursue, as appropriate, the Products Insurance Causes of Action, and Liquidating Reichhold's rights to commence, prosecute or settle such Products Insurance Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. Liquidating Reichhold may pursue such Products Insurance Causes of Action, as appropriate, in accordance with the best interests of Liquidating Reichhold. No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Products Insurance Claims against them as any indication that Liquidating Reichhold shall not pursue any and all available Products Insurance Causes of Action against them. Liquidating Reichhold expressly reserves all rights to prosecute any and all Products Insurance Causes of Action against any Entity, except as otherwise expressly provided in the Plan. Unless any Products Insurance Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Court order, Liquidating Reichhold expressly reserves all Products Insurance Claims for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppels (judicial, equitable or otherwise) or laches, shall apply to such Products Insurance Causes of Action upon, after or as a consequence of a Confirmation or Consummation.

The substantive consolidation of the Debtors and their Estates pursuant to the Confirmation Order and Article V.A of this Plan shall not, and shall not be deemed to, prejudice any of the Products Insurance Causes of Action, which shall survive entry of the Confirmation Order for the benefit of the Debtors and their Estates, and, upon the Effective Date, for the benefit of Liquidating Reichhold.

**L.    Effectuating Documents; Further Transactions**

Liquidating Reichhold and the Liquidating Trustee, subject to the terms and conditions of this Plan and the Liquidating Trust Agreement, shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

**A.    Distributions for Claims Allowed as of the Effective Date**

Except as otherwise provided herein or as ordered by the Court, all Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Initial Distribution Date by the Disbursing Agent. Distributions on account of Claims that first become Allowed Claims after the Effective Date shall be made pursuant to the terms and conditions of this Plan and the Liquidating Trust Agreement. Notwithstanding any other provision of the Plan to the contrary, no Distribution shall be made on account of any Allowed Claim or portion thereof that (i) has been satisfied after the Petition Date; (ii) is listed in the

38

schedules as contingent, unliquidated, disputed or in a zero amount, and for which a Proof of Claim has not been timely filed; or (iii) is evidenced by a Proof of Claim that has been amended by a subsequently filed Proof of Claim.

## B.    Disbursing Agent

The Disbursing Agent shall make all Distributions required under this Plan, subject to the terms and provisions of this Plan and the Liquidating Trust Agreement.  If the Disbursing Agent is an independent third party designated to serve in such capacity, such Disbursing Agent shall receive, without further Court approval, reasonable compensation from the Liquidating Trust for distribution services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses.  No Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties.  The Disbursing Agent shall be authorized and directed to rely upon the Debtors' books and records and the Liquidating Trust's, or Liquidating Reichhold's (as applicable) representatives and professionals in determining Allowed Claims not entitled to Distributions under the Plan in accordance with the terms and conditions of this Plan.

All Class 3 Distributions for the Holders of Senior Secured Noteholder Claims shall be made to the Senior Secured Notes Trustee who shall act as the Disbursing Agent with respect to the Distributions to Holders of Senior Secured Noteholder Claims, and shall be subject in all respects to the right of the Senior Secured Notes Trustee to assert the Senior Secured Notes Trustee Charging Lien against such Distributions.  The Senior Secured Notes Trustee may transfer such Distributions through the facilities of DTC and will be entitled to recognize and deal for all purposes under the Plan with Holders of Senior Secured Noteholder Claims to the extent consistent with the customary practices of DTC.

## C.    Delivery of Distributions and Undeliverable or Unclaimed Distributions

### 1.    Delivery of Distributions in General

Distributions to Holders of Allowed Claims shall be made by the Disbursing Agent (a) at the addresses set forth on the Proofs of Claim filed by such Holders (or at the last known addresses of such Holders if no Proof of Claim is filed or if the Debtors or the Liquidating Trustee have been notified of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim, after sufficient evidence of such addresses as may be requested by the Disbursing Agent is provided, (c) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Disbursing Agent has not received a written notice of a change of address, (d) at the addresses set forth in the other records of the Debtors or the Disbursing Agent at the time of the Distribution or (e) in the case of the Holder of a Claim that is governed by an agreement and is administered by an agent or servicer, at the addresses contained in the official records of such agent or servicer.

In making Distributions under the Plan, the Disbursing Agent may rely upon the accuracy of the Claims register maintained by the Claims Agent in the Chapter 11 Cases, as modified by any Final Order of the Court disallowing Claims in whole or in part.

39

2.    **Undeliverable and Unclaimed Distributions**

If the Distribution to any Holder of an Allowed Claim is returned to the Disbursing Agent as undeliverable or is otherwise unclaimed, no further Distributions shall be made to such Holder unless and until the Disbursing Agent is notified in writing of such Holder's then-current address and such Holder provides sufficient evidence of such address as may be requested by the Disbursing Agent, at which time all missed Distributions shall be made to such Holder without interest, subject to the time limitations set forth below. Amounts in respect of undeliverable Distributions made by the Disbursing Agent shall be returned to the Disbursing Agent until such Distributions are claimed. The Disbursing Agent shall segregate and, with respect to Cash, deposit in a segregated account designated as an unclaimed Distribution reserve undeliverable and unclaimed Distributions for the benefit of all such similarly-situated Persons until such time as a Distribution becomes deliverable or is claimed, subject to the time limitations set forth below.

Any Holder of an Allowed Claim that does not assert a claim pursuant to this Plan for an undeliverable or unclaimed Distribution within three (3) months after the date such Distribution was issued shall be deemed to have forfeited its Claim for such undeliverable or unclaimed Distribution and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed Distribution against the Debtors and their Estates, Liquidating Reichhold, the Liquidating Trustee, the Liquidating Trust, the Liquidating Trust Committee and their respective agents, attorneys, representatives, employees or independent contractors, and/or any of its or their property. In the case of undeliverable or unclaimed Distributions on account of Administrative Claims, Priority Tax Claims or Priority Non-Tax Claims, any Cash otherwise reserved for undeliverable or unclaimed Distributions shall revert to the Administrative Claims Reserve. In the case of undeliverable or unclaimed Distributions on account of Liquidating Trust Interests, any Cash otherwise reserved for undeliverable or unclaimed Distributions shall revert to the Liquidating Trust, and all title to and all beneficial interests in the Liquidating Trust Assets represented by any such undeliverable Distributions shall revert to and/or remain in the Liquidating Trust and shall be distributed in accordance with Article IV of the Liquidating Trust Agreement and the Plan, including by donation of remaining funds to one or more charitable institutions qualified as a not-for-profit corporation, under applicable federal and state laws, as may be selected by the Liquidating Trustee. The reversion of such Cash to the Administrative Claims Reserve or the Liquidating Trust, as applicable, shall be free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary and shall be treated in accordance with the terms of this Plan and the Liquidating Trust Agreement. Nothing contained in this Plan or the Liquidating Trust Agreement shall require the Debtors, Liquidating Reichhold, the Liquidating Trust, the Liquidating Trustee or any Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

D.    **Means of Cash Payment**

Cash payments made pursuant to this Plan shall be in U.S. dollars and shall be made at the option and in the sole discretion of the Disbursing Agent by (i) checks drawn on or (ii) wire transfers from a domestic bank selected by the Disbursing Agent. In the case of foreign creditors, Cash payments may be made, at the option of the Disbursing Agent, in such funds and by such means as are necessary or customary in a particular jurisdiction.

E.    **Interest on Claims**

Unless otherwise specifically provided for in this Plan or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Claimholder shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

F.    **Withholding and Reporting Requirements**

In accordance with section 346 of the Bankruptcy Code and in connection with the Plan and all Distributions hereunder, the Disbursing Agent shall, to the extent applicable, comply with all withholding and reporting requirements imposed by any federal, state, provincial, local or foreign taxing authority. The Disbursing Agent shall be authorized to take any and all actions necessary and appropriate to comply with such requirements.

All Distributions hereunder shall be subject to withholding and reporting requirements. As a condition of making any Distribution under the Plan, each Entity holding an Allowed Claim, , is required to provide any information necessary in writing, including returning W-9 statements, to effect the necessary information reporting and withholding of applicable taxes with respect to Distributions to be made under the Plan as the Disbursing Agent may request. The Disbursing Agent shall be entitled in its sole discretion to withhold any Distributions to a Holder of an Allowed Claim, who fails to provide tax identification or social security information within the timeframe requested in writing by the Disbursing Agent to such Holder of an Allowed Claim, which timeframe shall not be less than 30 days. The Distribution on account of any Holder of an Allowed Claim that fails to timely respond to the Disbursing Agent shall be treated as an undeliverable or unclaimed Distribution pursuant to Article VI.C.2 of the Plan.

Notwithstanding any other provision of this Plan, each entity receiving a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of tax obligations on account of any such Distribution.

G.    **Setoffs**

Subject to the terms and conditions of the Liquidating Trust Agreement, the Debtors, Liquidating Reichhold and/or the Liquidating Trust may, but shall not be required to, set off against any Claim and the payments or other Distributions to be made under the Plan on account of the Claim, claims of any nature whatsoever that the Debtors and/or Liquidating Reichhold may have against the Holder thereof, provided that any such right of setoff that is exercised shall be allocated, first, to the principal amount of the related Claim, and thereafter to any interest portion thereof, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, Liquidating Reichhold and/or the Liquidating Trust of any such claim that the Debtors and/or Liquidating Reichhold may have against such Holder.

52719/0001-11906966v12

## H.    Procedure for Treating and Resolving Disputed, Contingent and/or Unliquidated Claims

### 1.    Objection Deadline; Prosecution of Objections

Except as set forth in the Plan with respect to Professional Fee Claims and Administrative Claims, all objections to Claims must be filed and served on the Holders of such Claims by the Claims Objection Deadline, as the same may be extended by the Court.  If an objection has not been filed to a Proof of Claim or the Schedules have not been amended with respect to a Claim that (i) was Scheduled by the Debtors but (ii) was not Scheduled as contingent, unliquidated and/or disputed, by the Claims Objection Deadline, as the same may be extended by order of the Court, the Claim to which the Proof of Claim or Scheduled Claim relates shall be treated as an Allowed Claim if such Claim has not been Allowed earlier.  Notice of any motion for an order extending the Claims Objection Deadline shall be required to be given only to those persons or entities that have requested notice in the Chapter 11 Cases in accordance with Bankruptcy Rule 2002.

Subject to any reporting to the Liquidating Trust Committee that may be required under the Liquidating Trust Agreement, and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, on and after the Effective Date, the Liquidation Trust shall have the authority to: (1) file, withdraw or litigate to judgment objections to and requests for estimation of Claims (expect for  Asbestos Claims); (2) settle or compromise any Disputed Claim (except for Asbestos Claims) without any further notice to or action, order or approval by the Court; and (3) administer and adjust the Claims register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Court.  In the event that any objection filed by the Debtors or the Committee remains pending as of the Effective Date, the Liquidating Trustee shall be deemed substituted for the Debtors or the Committee, as applicable, as the objecting party (except for Asbestos Claims).

The Liquidating Trust shall be entitled to assert all of the Debtors' rights, claims, defenses, offsets, rights of recoupment, setoffs, rights of disallowance, subrogation, recharacterization and/or equitable subordination and counter-claims with respect to Claims (except for Asbestos Claims).

Liquidating Reichhold shall have the authority to: 1) file, withdraw or litigate to judgment objections to and requests for estimation of Asbestos Claims; (2) settle or compromise any Disputed Claim that is an Asbestos Claim without any further notice to or action, order or approval by the Court; and (3) administer and adjust the Claims register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Court.

### 2.    No Distributions Pending Allowance

Notwithstanding any other provision of the Plan or the Liquidating Trust Agreement, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become

an Allowed Claim. To the extent that a Claim is not a Disputed Claim but is held by a Holder that is or may be liable to Liquidating Reichhold or the Liquidating Trust on account of a Cause of Action, no payments or Distributions shall be made with respect to all or any portion of such Claim unless and until such Claim and liability have been settled or withdrawn or have been determined by Final Order of the Court or such other court having jurisdiction over the matter.

### 3.     Disputed Claims Reserves

On the Initial Distribution Date and on each subsequent Periodic Distribution Date, the Liquidating Trust shall withhold on a Pro Rata basis from property that would otherwise be distributed to Holders of General Unsecured Claims entitled to Distributions under the Plan on such date, in a separate Disputed Claims Reserve, such amounts or property as may be necessary to equal one hundred percent (100%) of Distributions to which Holders of such Disputed General Unsecured Claims would be entitled under this Plan if such Disputed General Unsecured Claims were allowed in their Disputed Claims Amount. The Liquidating Trust may request, if necessary, estimation for any Disputed General Unsecured Claim that is contingent or unliquidated, or for which the Liquidating Trust determines to reserve less than the face amount. The Liquidating Trust shall withhold the applicable Disputed Claims Reserve with respect to such Claims based upon the estimated amount of each such Claim as estimated by the Court. If the Liquidating Trust elects not to request such an estimation from the Court with respect to a Disputed General Unsecured Claim that is contingent or unliquidated, the Liquidating Trust shall withhold the applicable Disputed Claims Reserve based upon the good faith estimate of the amount of such General Unsecured Claim by the Liquidating Trust. If practicable, the Liquidating Trust shall invest any Cash that is withheld as the Disputed Claims Reserve in an appropriate manner to ensure the safety of the investment, in accordance with the Liquidating Trust Agreement. Nothing in this Plan, the Disclosure Statement or the Liquidating Trust Agreement shall be deemed to entitle the Holder of a Disputed General Unsecured Claim to postpetition interest on such Claim, however. The Liquidating Trustee shall not be required to reserve more than $100,000 in the Disputed Claims Reserve with respect to all Asbestos Claims.

### 4.     Distributions After Allowance

Payments and Distributions to Holders of Disputed Claims that ultimately become Allowed Claims shall be made in accordance with provisions of the Liquidating Trust Agreement that govern Distributions to Holders of Allowed General Unsecured Claims and Holders of Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims.

### 5.     De Minimis Distributions

The Liquidating Trust shall not be required to make any distributions to Holders of Allowed Claims aggregating less than fifty dollars ($50.00). When the aggregate amount of distributions held by the Liquidating Trustee for the benefit of a holder of a Claim exceeds $50.00, the Liquidating Trustee shall distribute such distribution to such holder. If, at the time that the final Distribution under this Plan is to be made, the distribution(s) held by the Liquidating Trustee for the benefit of a holder of a Claim total less than $50.00, such funds shall not be distributed to such holder, but rather, such Claims shall be deemed expunged and such

43

Distribution shall vest in the Liquidating Trust. Cash that otherwise would be payable under the Plan to Holders of Liquidating Trust Interests but for this Article VI.I.5 shall remain Liquidating Trust Assets to be used in accordance with the Liquidating Trust Agreement. Cash that otherwise would be payable under the Plan to Holders of Administrative Claims, Priority Tax Claims and Priority Non-Tax Claims but for this Article VI.I.5 shall remain in the Administrative Claims Reserve.

### 6. Fractional Cents

Any other provision of this Plan notwithstanding, the Disbursing Agent shall not be required to make Distributions or payments of fractional cents. Whenever any payment of a fraction of a cent under this Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (up or down), with half cents being rounded down.

### 7. Allocation of Plan Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for all income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

### 8. Distribution Record Date

The Disbursing Agent shall have no obligation to recognize the transfer of or sale of any participation in any Allowed Claim that occurs after the close of business on the Distribution Record Date. Instead, the Disbursing Agent shall be entitled to recognize and deal for all purposes under this Plan with only those record Holders stated on the official Claims register or the Debtors' Books and Records, as applicable, as of the close of business on the Distribution Record Date. This Article shall not apply to the holders of the Senior Secured Notes whose Distributions shall be made through the Senior Secured Notes Trustee.

## ARTICLE VII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A. Rejected Contracts and Leases

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into in connection with the Plan, each of the Executory Contracts and Unexpired Leases to which any Debtor is a party shall be deemed automatically rejected by the applicable Debtor as of the Effective Date, unless such contract or lease (i) previously has been assumed or rejected by the Debtors, (ii) expired or terminated pursuant to its own terms, (iii) is the subject of a motion to assume or reject pending before the Court as of the Confirmation Date or (iv) is identified on Exhibit E hereto as a Contract to be assumed or assumed/assigned to the Liquidating Trust; provided, however, that nothing contained in this

44

Plan shall constitute an admission by any Debtor that any such contract or lease is an Executory Contract or Unexpired Lease or that any Debtor or its successors and assigns has any liability thereunder; and, provided further, that the Debtors reserve their right, at any time before the Confirmation Date, to assume any Executory Contract or Unexpired Lease that was not already rejected prior to the Confirmation Date. The Confirmation Order shall constitute an order of the Court approving the rejections described in this Article VII.A, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

**B.      Products Insurance Policies**

Notwithstanding anything in the Disclosure Statement, this Plan, the Confirmation Order or any other order of this Court to the contrary (including, without limitation, any other provision that purports to be preemptory or supervening or grants a release), on the Effective Date, each of the Products Insurance Policies shall, as applicable, either be (i) deemed assumed to the extent such Products Insurance Policies were executory contracts of Reichhold pursuant to section 365 of the Bankruptcy Code or (ii) continued in accordance with its terms.

**C.      Director and Officer Insurance Policies and Agreements**

The Debtors do not believe that the director and officer liability policies issued to, or insurance agreements entered into by, any Debtor prior to or after the Petition Date constitute executory contracts. To the extent that such insurance policies or agreements are considered to be Executory Contracts, they will be deemed assumed as of the Effective Date.

**D.      Assumption and Assignment of Executory Contracts**

On the Effective Date, pursuant to section 365 of the Bankruptcy Code, the Debtors will assume and assign to the Liquidating Trust the Executory Contracts identified on Exhibit F that are marked "to be assumed and assigned to the Liquidating Trust".

**E.      Rejection Damages Bar Date**

If the rejection of an Executory Contract or Unexpired Lease pursuant to Article VII.A above gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the applicable Debtor or its Estate, Liquidating Reichhold, the Liquidating Trust or their respective successors or properties unless a Proof of Claim is filed with the Court and served on counsel for the Liquidating Trust within thirty (30) days after service of notice of entry of the Confirmation Order.

**F.      Indemnification Obligations**

Any obligations of the Debtors pursuant to their corporate charters and bylaws or agreements, including amendments, entered into any time prior to the Effective Date, to indemnify, reimburse or limit the liability of any Person pursuant to the Debtors' certificates of incorporation, bylaws, policy of providing employee indemnification, applicable state law or specific agreement in respect of any claims, demands, suits, causes of action or proceedings against such Persons based upon any act or omission related to such Persons' service with, for or on behalf of the Debtors prior to the Effective Date with respect to all present and future actions,

45

suits and proceedings relating to the Debtors shall survive confirmation of the Plan and except as set forth herein, remain unaffected thereby, irrespective of whether such defense, indemnification, reimbursement or limitation of liability accrued or is owed in connection with an occurrence before or after the Petition Date; provided, however, that all monetary obligations under this Article VII.C shall be limited solely to available insurance coverage and neither Liquidating Reichhold, the Liquidating Trust, the Liquidating Trustee nor any of their assets shall be liable for any such obligations. Any Claim based on the Debtors' obligations set forth in this Article VII.C shall not be a Disputed Claim or subject to any objection in either case by reason of section 502(e)(1)(B) of the Bankruptcy Code. This provision for indemnification obligations shall not apply to or cover any Claims, suits or actions against a Person that result in a final order determining that such Covered Person is liable for fraud, willful misconduct, gross negligence, bad faith, self-dealing or breach of the duty of loyalty.

**G.     Retiree Benefits**

On October 20, 2015, the Debtors entered into separate settlement agreements with the Retiree Committee and United Steelworkers to terminate their retiree welfare plans and resolve all claims related thereto. Pursuant to those settlement agreements and subject to Court approval, the Debtors will terminate the retiree life and medical insurance programs at 11:59 p.m. on November 30, 2015. In connection with those settlements, the Debtors agreed to make settlement payments to the retirees in satisfaction of all claims against the Debtors. The Debtors have also made proposals to terminate retiree benefits consistent with the terms of the Retiree Committee and Steelworkers' settlements to the following unions representing retirees: (a) International Brotherhood of Teamsters (the "Teamsters"); (b) International Union of Painters and Allied Trades ("IUPA"); and (c) International Chemical Workers Union ("ICWU"). Despite the Debtors' repeated attempts to negotiate with those unions, the Teamsters, IUPA and ICWU failed to respond to the Debtors' proposal.

On October 27, 2015, the Debtors filed a motion pursuant to sections 105(a), 363 and 1114(e)(1)(B) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules (i) authorizing the Debtors' entry into and approving the settlement agreements with the Steelworkers and Retiree Committee and (ii) approving termination of retiree benefits for the retired members of the Teamsters, IUPA and ICWU. The Court approved the motion pursuant to an order dated November 13, 2015 [Docket No. 1222].

## ARTICLE VIII

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

**A.     Conditions to Confirmation**

The following are conditions precedent to confirmation of the Plan, each of which must be satisfied or waived in accordance with Article VIII.C of the Plan:

1.     the Confirmation Order shall be in form and substance reasonably acceptable to the Debtors and the Committee and shall, among other things:

(a)        provide that the Debtors are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the agreements or documents created under or in connection with the Plan; and

(b)        provide that, notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall be immediately effective, subject to the terms and conditions of the Plan; and

2.        the Confirmation Order shall have been entered by the Court.

## B.        Conditions to Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Article VIII.C hereof:

1.        the Confirmation Order shall not then be stayed, vacated or reversed and shall not have been amended without the agreement of the Debtors and the Committee;

2.        the Confirmation Order shall not then be subject to a pending appeal, and the time to appeal or seek review or rehearing or leave to appeal has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending;

3.        the Liquidating Trust shall have been established and the Liquidating Trust Assets shall have been transferred to and vested in the Liquidating Trust free and clear of all Claims and Liens, except as specifically provided in the Plan and the Liquidating Trust Agreement;

4.        the Professional Fee Reserve and the Administrative Claims Reserve shall have been funded in Cash in full and such amounts, together with any Administrative Claims that the Debtors paid in the ordinary course of business prior to the Effective Date;

5.        the Liquidating Trustee and the Liquidating Trust Committee shall have been appointed and subject to the occurrence of the Effective Date, assumed their rights and responsibilities under the Plan and the Liquidating Trust Agreement, as applicable;

6.        the Products Insurance Cooperation Agreement shall have been signed;

7.        all actions, documents and agreements necessary to implement the provisions of the Plan to be effectuated on or prior to the Effective Date shall be reasonably satisfactory to the Debtors and the Committee and such actions, documents and agreements shall have been effected or executed and delivered.  The Liquidating Trust Agreement shall be completed and in final form and, as applicable, executed by the parties thereto and all conditions precedent contained in any of the foregoing shall have been satisfied or waived.

## C.        Waiver of Conditions

Each of the conditions to the Effective Date set forth in Article VIII.B of the Plan may be waived in whole or in part by the Debtors without any other notice to parties in interest or the Court, provided that the Debtors have received the prior written consent of the Committee.  The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtors

47

regardless of the circumstances giving rise to the failure of such condition to be satisfied.  The failure of any party to exercise any of its foregoing rights shall not be deemed a waiver of any of its other rights, and each such right shall be deemed an ongoing right that may be asserted thereby at any time.

## ARTICLE IX

## ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

**A.      Professional Fee Claims**

**1.      Final Fee Applications**

All final requests for payment of Professional Fee Claims (the "Final Fee Applications") must be filed no later than forty-five (45) days after the Effective Date.  Objections, if any, to Final Fee Applications of such Professionals must be filed and served on the Liquidating Trust, the Liquidating Trust Committee, the requesting Professional and the Office of the United States Trustee no later than twenty (20) days from the date on which each such Final Fee Application is served and filed.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Court, the Allowed amounts of such Professional Fee Claims shall be determined by the Court.

**2.      Employment of Professionals after the Effective Date**

From and after the Effective Date, any requirement that professionals comply with sections 327 through 331 of the Bankruptcy Code or any order previously entered by the Court in seeking retention or compensation for services rendered or expenses incurred after such date shall terminate.

**3.      Senior Secured Notes Trustee Fees**

Nothing in this Plan shall in any way affect or diminish the right of the Senior Secured Notes Trustee to assert the Senior Secured Notes Trustee Charging Lien against Distributions to Holders of Senior Secured Noteholder Claims with respect to any unpaid Senior Secured Notes Trustee Fees.

**B.      Other Administrative Claims**

All requests for payment of an Administrative Claim arising from April 2, 2015 through the Effective Date, other than Professional Fee Claims, must be filed with the Claims Agent and served on the Debtors or the Liquidating Trust, as applicable, by the date that falls on the thirtieth day (30th) day following the Effective Date.  Unless Liquidating Reichhold, the Liquidating Trust or any other party in interest objects to an Administrative Claim by the Administrative Claims Objection Deadline, such Administrative Claim shall be deemed Allowed in the amount requested.  In the event that Liquidating Reichhold, the Liquidating Trust or any other party in interest objects to an Administrative Claim, the Court shall determine the Allowed amount of such Administrative Claim.

48

# ARTICLE X

# EFFECTS OF CONFIRMATION

## A.    Compromise and Settlement of Claims and Controversies

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the classification, Distributions, releases and other benefits provided pursuant to the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to the Plan or relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Claim or Interest, or any Distribution to be made on account of such Claim or Interest.  The entry of the Confirmation Order shall constitute the Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Court that such compromise or settlement is in the best interests of the Debtors, their Estates and Holders of Claims and Interests and is fair, equitable and reasonable.

## B.    Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims and Interests, whether or not such Holders shall receive or retain any property or interest in property under the Plan, and their respective successors and assigns, including, but not limited to, Liquidating Reichhold, the Liquidating Trust and all other parties in interest in the Chapter 11 Cases.

## C.    Discharge of the Debtors

Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation shall not discharge Claims against the Debtors; provided, however, that no Claimholder or Interest Holder may, on account of such Claim or Interest, seek or receive any payment or other Distribution from, or seek recourse against, any Debtor, Liquidating Reichhold and/or their respective successors, assigns and/or property, except as expressly provided in this Plan.

## D.    Releases

### 1.    Releases by the Debtors

*As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, and any Person seeking to exercise the rights of the Debtors' Estates, including, without limitation, any successor to the Debtors, any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code or the Liquidating Trust, whether pursuing an action derivatively or otherwise, shall be deemed to forever release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whatsoever (other than for fraud, willful misconduct or gross negligence) in connection with or related to the Debtors, the Chapter 11 Cases or the Plan (other than the rights of the Debtors and the Liquidating Trustee to enforce the Plan and the contracts, instruments, releases and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or*

49

*unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Confirmation Date, against (a) the Debtors, their Professionals and Court-retained agents (b) the Debtors' directors, officers and employees employed by or serving the Debtors on or after the Petition Date, (c) the Committee and its Professionals and, solely in their respective capacities as members or representatives of the Committee, each member of the Committee; provided, however, that nothing in this Article X.D.1 shall be a waiver of any defense, offset or objection to any Claim filed against the Debtors and their Estates by any Person.*

E.    **Exculpation and Limitation of Liability**

*None of (a) the Debtors, (b) Liquidating Reichhold, (c) the directors, officers or employees of any of the Debtors serving at any time during the pendency of the Chapter 11 Cases, (d) the professionals or Court-retained agents of the Debtors, (e) the Committee and its professionals and, solely in their respective capacities as members or representatives of the Committee, each member of the Committee, or (f) any of the successors or assigns of any of the parties identified in the foregoing clauses (a) through (e), shall have or incur any liability to any Holder of a Claim or an Interest, or any other party in interest, or any of their respective members, directors, officers, employees, advisors, attorneys, professionals, agents, partners, stockholders or affiliates, or any of their respective successors or assigns, for any act or omission in connection with, relating to or arising out of, the Chapter 11 Cases, the formulation, negotiation or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which are the result of fraud, gross negligence or willful misconduct, and such parties in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.*

*Notwithstanding any other provision of the Plan, no Holder of a Claim or an Interest, no other party in interest, none of their respective members, directors, officers, employees, advisors, attorneys, professionals, agents, partners, stockholders or affiliates, and none of their respective successors or assigns, shall have any right of action against (a) any of the Debtors, (b) Liquidating Reichhold, (c) the directors, officers or employees of any of the Debtors serving at any time during the pendency of the Chapter 11 Cases, (d) the professionals or Court-retained agents of the Debtors, (e) the members and professionals of the Committee, but only in their capacities as such,  or (f) any of the successors or assigns of any of the parties identified in the foregoing clauses (a) through (e), for any act or omission in connection with, relating to or arising out of, the Chapter 11 Cases, the formulation, negotiation or implementation of the Plan, solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which are the result of fraud, gross negligence or willful misconduct.*

50

## F.   Injunction

*Confirmation of this Plan shall have the effect of, among other things, permanently enjoining (a) all Entities or Persons that have held, hold or may hold or have asserted, assert or may assert Claims against or Interests in the Estates with respect to any such Claim or Interest, and (b) respecting (vi)(A), (vi)(B), and (vi)(C) of this Article X.F, the Estates and the Liquidating Trust, from and after the Effective Date, from taking any of the following actions (other than actions to enforce any rights or obligations under the Plan): (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Estates, Liquidating Reichhold or the Liquidating Trust or any of its or their property; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Estates, Liquidating Reichhold or the Liquidating Trust or any of its or their property; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Estates, Liquidating Reichhold or the Liquidating Trust or any of its or their property; (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Estates, Liquidating Reichhold or the Liquidating Trust or any of its or their property, except with respect to any right of setoff asserted prior to the entry of the Confirmation Order, whether asserted in a Proof of Claim or otherwise, or as otherwise contemplated or allowed by the Plan; (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; and (vi) prosecuting or otherwise asserting (A) any Claim or Interest, including any right, claim or Cause of Action, released pursuant to the Plan, (B) any form of objection to any Claim that is Allowed by the Plan, or (C) asserting Avoidance Actions against any Holder of a Claim that is Allowed by the Plan. Notwithstanding any contrary suggestion in the Plan, the injunction contemplated by this Section shall apply to any Asbestos Claim to the same extent such Claim is barred by the Bar Date Order. Additionally, unless otherwise explicitly stated in the Plan, the injunction contemplated by this Section shall prohibit the assertion against the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Committee, of all Claims or Interests, if any, related to the Debtors, including Environmental Claims.*

## G.   The Automatic Stay

Solely with respect to Asbestos Claims, the automatic stay imposed by section 362 of the Bankruptcy Code will be terminated as of the date that is 60 days after the Effective Date and, pursuant to section 108(c) of the Bankruptcy Code, the applicable statute of limitations with respect to any such Claim that did not expire prior to the Petition Date will cease to be tolled as of that date.

The automatic stay of Bankruptcy Code section 362(a) and the injunction set forth in Article X.F of the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, to permit Insurers to (a) handle, administer, defend, settle and/or pay (i) workers' compensation claims, whether arising prior to or subsequent to the Effective Date, (ii) any claim where a claimant asserts a direct claim against an Insurer under applicable law, and (iii) any claim for which an order has been entered by the Bankruptcy Court granting the

52719/0001-11906966v12

claimant relief from the automatic stay or the injunction set forth in Article X.F of the Plan to proceed with its claim, (b) pay any and all costs in relation to each of the foregoing and (c) to the extent the Debtors, Liquidating Reichhold or the Liquidating Trust fail to pay and/or reimburse Insurers, as required by the Plan or Bankruptcy Code, for any of the amounts in relation to the foregoing claims and costs for which the insureds are liable under the Insurance Policies (and which shall not be released or discharged under the Plan or the Confirmation Order), Insurers may draw upon, hold and/or apply any collateral and/or security, including, without limitation letter of credit proceeds and paid loss deposit funds, provided by or on behalf of the Debtors therefor pursuant to the terms of the Insurance Policies and any existing letters of credit (and the agreements and documents related thereto); provided, however, that the Insurers will provide, on a quarterly basis, Liquidating Reichhold and the Liquidating Trust with a summary of all claims settled and all draws of any collateral and/or security, including, without limitation letter of credit proceeds and paid loss deposit funds and any existing letters of credit.

## H.    Compromises and Settlements

Pursuant to Bankruptcy Rule 9019(a), the Debtors may compromise and settle Claims (a) against them and (b) that they have against other Persons. The Debtors expressly reserve the right (with Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against them and claims that they may have against other Persons up to and including the Effective Date.

After the Effective Date, such right shall pass to Liquidating Reichhold or the Liquidating Trust, as applicable, and shall be governed by the terms of Article VI.I of the Plan, the Liquidating Trust Agreement and the Products Insurance Cooperation Agreement, as applicable.

## I.    Satisfaction of Subordination Rights

All Claims against the Debtors and all rights and claims between or among Claimholders relating in any manner whatsoever to Distributions on account of Claims against the Debtors based upon any subordination rights, whether asserted or unasserted, legal or equitable, shall be deemed satisfied by the Distributions under the Plan to Claimholders having such subordination rights, and such subordination rights shall be deemed waived, released, discharged and terminated as of the Effective Date. Distributions to the various Classes of Claims hereunder shall not be subject to levy, garnishment, attachment or like legal process by any Claimholder by reason of any subordination rights or otherwise, so that each Claimholder shall have and receive the benefit of the Distributions in the manner set forth in the Plan.

## J.    ERISA Claims

Notwithstanding anything to the contrary in the Plan, any claim arising under Title I of the Employee Retirement Income Security Act of 1974, or ERISA, for breach of fiduciary duty or relating to a prohibited transaction with respect to the Reichhold, Inc. Retirement Plan shall not be discharged, released, or enjoined; provided, however, that any such claim against the Debtors for breach of fiduciary duty or relating to a prohibited transaction with respect to the Reichhold, Inc. Retirement Plan will be treated solely as an unsecured claim.

52719/0001-11906966v12

## ARTICLE XI

## RETENTION OF JURISDICTION

**A.      Retention of Jurisdiction by the Court**

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order, substantial consummation of the Plan and occurrence of the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, the Plan, the Liquidating Trust Agreement and the Liquidating Trust to the fullest extent permitted by law, including, among other things, jurisdiction to:

1.      To the extent not otherwise determined by the Plan, to determine (i) the allowance, classification or priority of Claims upon objection by any party in interest entitled to file an objection, or (ii) the validity, extent, priority and nonavoidability of consensual and nonconsensual Liens and other encumbrances against assets of the Estates, Causes of Action, or property of the Estates or the Liquidating Trust;

2.      To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Entity or Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order or any other order of the Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Court in the Chapter 11 Cases on or before the Effective Date with respect to any Entity or Person;

3.      To protect the assets or property of the Estates and/or the Liquidating Trust, including Causes of Action, from claims against, or interference with, such assets or property, including actions to quiet or otherwise clear title to such property or to resolve any dispute concerning Liens or other encumbrances on any assets of the Estates;

4.      To determine any and all applications for allowance of Professional Fee Claims;

5.      To determine any Priority Tax Claims, Priority Non-Tax Claims or Administrative Claims, entitled to priority under section 507(a) of the Bankruptcy Code;

6.      To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and the making of Distributions hereunder;

7.      To determine any and all motions related to the rejection, assumption or assignment of Executory Contracts or Unexpired Leases or determine any issues arising from the deemed rejection of Executory Contracts and Unexpired Leases set forth in Article VII of the Plan;

52719/0001-11906966v12

8.      Except as otherwise provided herein, to determine all applications, motions, adversary proceedings, contested matters, actions and any other litigated matters instituted in and prior to the closing of the Chapter 11 Cases, including any remands;

9.      To enter a Final Order closing each of the Chapter 11 Cases;

10.     To modify the Plan under section 1127 of the Bankruptcy Code, remedy any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out their intent and purposes;

11.     To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Entity or Person, to the full extent authorized by the Bankruptcy Code;

12.     To determine any tax liability pursuant to section 505 of the Bankruptcy Code;

13.     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

14.     To resolve any disputes concerning whether an Entity or Person had sufficient notice of the Chapter 11 Cases, the applicable Bar Date, the hearing to consider approval of the Disclosure Statement or the Confirmation Hearing or for any other purpose;

15.     To resolve any dispute or matter arising under or in connection with any order of the Court entered in the Chapter 11 Cases;

16.     To authorize, as may be necessary or appropriate, sales of assets as necessary or desirable and resolve objections, if any, to such sales;

17.     To resolve any disputes concerning any release, injunction, exculpation or other waiver or protection provided in the Plan;

18.     To approve, if necessary, any Distributions, or objections thereto, under the Plan;

19.     To approve, as may be necessary or appropriate, any Claims settlement entered into or offset exercised by the Liquidating Trust;

20.     To the extent it has jurisdiction, to resolve any dispute or matter arising under or in connection with the Liquidating Trust or the Products Insurance Cooperation Agreement;

22.     To order the production of documents, disclosures or information, or to appear for deposition demanded pursuant to Bankruptcy Rule 2004; and

54

23.     To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code.

## B.     Retention of Non-Exclusive Jurisdiction by the Court

Notwithstanding anything else in the Plan, the Court shall retain non-exclusive jurisdiction over all Liquidating Trust Causes of Action prosecuted by the Liquidating Trust.

## C.     Failure of Court to Exercise Jurisdiction

If the Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in Article XI.A of the Plan, the provisions of this Article XI shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

## A.     Modifications and Amendments

The Debtors may alter, amend or modify the Plan or any Exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date provided that the Debtors have received the prior written consent of the Committee, which consent shall not unreasonably be withheld. After the Confirmation Date and prior to substantial consummation of the Plan as defined in section 1101(2) of the Bankruptcy Code, the Debtors may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims under the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Court.

## B.     Severability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, then the Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of

55

the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## C.    Successors and Assigns

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of that Person.

## D.    Payment of Statutory Fees

All fees payable through the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid on or as soon as practicable after the Effective Date. The Debtors, prior to the Effective Date, and the Liquidating Trust, from and after the Effective Date, shall pay statutory fees to the U.S. Trustee in accordance with 28 U.S.C. § 1930 until the Chapter 11 Cases are closed or converted and/or the entry of final decrees. In addition, the Liquidating Trust shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing in conformance with the U.S. Trustee Guidelines. The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which shall be deemed an Administrative Claim against the Debtors and their Estates.

## E.    Revocation, Withdrawal or Non-Consummation

The Debtors reserve the right to revoke or withdraw the Plan as to any or all of the Debtors prior to the Confirmation Date and to file subsequent plans. If the Debtors revoke or withdraw the Plan as to any or all of the Debtors, or if Confirmation or consummation of the Plan as to any or all of the Debtors does not occur, then, with respect to such Debtors, (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, such Debtors or any other Person, (ii) prejudice in any manner the rights of such Debtors or any other Person or (iii) constitute an admission of any sort by such Debtors or any other Person.

## F.    Service of Documents

Any notice, request or demand required or permitted to be made or provided to or upon a Debtor, the Committee, the Liquidating Trust or the Liquidating Trust Committee shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail or (v) facsimile transmission, (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed and (d) addressed as follows:

52719/0001-11906966v12

***The Debtors***

Roger Willis
Reichhold Liquidation, Inc.
1035 Swabia Ct.
Durham, NC 27705
Telephone: (919) 990-7500
Facsimile: (919) 990-7749

with a copy to:

Norman Pernick, Esq.
Marion Quirk, Esq.
Cole Schotz P.C.
500 Delaware Ave., Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

Robert A. Del Genio
CDG Group, LLC
650 Fifth Avenue
New York, NY 10019
Telephone: (212) 813-1300
Facsimile: (212) 813-0580

***Committee***

Mark S. Indelicato, Esq.
Janine M. Figueiredo, Esq.
Hahn & Hessen LLP
488 Madison Avenue
New York, NY 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

***Liquidating Trust Committee***

The Pension Benefit Guaranty Corporation
Evonik Corporation
Alnor Oil Company, Inc.

*Liquidating Trustee*

Alan D. Halperin
c/o Halperin Battaglia Benzija, LLP
40 Wall Street, 37th Floor
New York, New York 10005
Telephone: (212) 765-9100

## G.    Plan Supplement(s)

Exhibits to the Plan not attached hereto shall be filed in one or more Plan Supplements by the Plan Supplement Filing Date.  Any Plan Supplement (and amendments thereto) filed by the Debtors shall be deemed an integral part of the Plan and shall be incorporated by reference as if fully set forth herein.  Copies of case pleadings, including the Plan Supplements, also may be examined by any party in interest: (i) between the hours of 8:00 a.m. and 4:00 p.m., Monday through Friday, excluding federal holidays, at the Office of the Clerk of the Court, 824 N. Market St., 3rd Floor, Wilmington, Delaware 19801; (ii) at the Debtors' case website (http://www.loganandco.com); or (iii) for a fee, at the Bankruptcy Court's website (http://www.deb.uscourts.gov).  The documents contained in any Plan Supplements shall be approved by the Court pursuant to the Confirmation Order.

52719/0001-11906966v12

Dated: Wilmington, Delaware
      November 19, 2015


REICHHOLD HOLDINGS US, INC., *et al.*,
Debtors and Debtors-in-Possession

By: _____
Name: Roger L. Willis
Title:  Authorized Officer


COLE SCHOTZ P.C.

By: _____
    Norman L. Pernick (I.D. No. 2290)
    Marion M. Quirk (I.D. No. 4136)
    500 Delaware Avenue, Suite 1410
    Wilmington, DE 19801
    Telephone: (302) 652-3131
    Facsimile: (302) 652-3117

    -and-

    Gerald H. Gline
    Felice R. Yudkin
    25 Main Street
    Hackensack, NJ 07602-0800
    Telephone: (201) 489-3000
    Facsimile: (201) 489-1536